J-A11007-16

2016 PA Super 108

| | |
|---|---|
| FAITHLEE BROWN; AND JOSEPH HOANG AND KENNETH ROTHWEILER, ESQ., CO-ADMINISTRATORS OF THE ESTATE OF SON THI THANH HOANG, DECEASED AND HIREN PATEL, GUSTAV FREDERIKSEN, BRANDON OSBORN, ELORA LENCOSKI, BARBARA YEAGER-DOYLE, WILLIAM KOOMSON, FNU SAIFULLAH, KEITH PRESSMAN, CHARLES REID, MICHAEL KETCHPAW, SURAJ BALAKRISHNAN AND AHMED ALJAHMI, | IN THE SUPERIOR COURT OF PENNSYLVANIA |

Appellees

v.

GREYHOUND LINES, INC., SABRINA ANDERSON, FIRSTGROUP AMERICA, C.A.V. ENTERPRISES, LLC, AKOS GUBICA AND KAROLY GUBICA,

APPEAL OF: FIRSTGROUP AMERICA

No. 1167 EDA 2015

Appeal from the Order Entered April 1, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 131202598

| | |
|---|---|
| MANAJA LIVINGSTON, DARREN SHIN, ROSAURA SANCHEZ, HECTOR AMADO SANCHEZ, ROSA MARIA TAPIA, SEMEN BABADZHANOV AND TATIANA LIAKH, | IN THE SUPERIOR COURT OF PENNSYLVANIA |

Appellees

v.

GREYHOUND LINES, INC., SABRINA ANDERSON, FIRSTGROUP AMERICA,

- 1 -

C.A.V. ENTERPRISES, LLC, AKOS
GUBICA AND KAROLY GUBICA,

APPEAL OF: FIRSTGROUP AMERICA

No. 1169 EDA 2015

Appeal from the Order Entered April 1, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 140402946

FAITHLEE BROWN; AND JOSEPH HOANG
AND KENNETH ROTHWEILER, ESQ., CO-
ADMINISTRATORS OF THE ESTATE OF
SON THI THANH HOANG, DECEASED
AND HIREN PATEL, GUSTAV
FREDERIKSEN, BRANDON OSBORN,
ELORA LENCOSKI, BARBARA YEAGER-
DOYLE, WILIAM KOOMSON, FNU
SAIFULLAH, KEITH PRESSMAN, CHARLES
REID, MICHAEL KETCHPAW, SURAJ
BALAKRISHNAN AND AHMED ALJAHMI,

Appellees

v.

GREYHOUND LINES, INC., SABRINA
ANDERSON, FIRSTGROUP AMERICA,
C.A.V. ENTERPRISES, LLC, AKOS
GUBICA AND KAROLY GUBICA,

APPEAL OF: GREYHOUND LINES, INC.
AND SABRINA ANDERSON,

------------------------------------------------

MANAJA LIVINGSTON, DARREN SHIN,
ROSAURA SANCHEZ, HECTOR AMADO
SANCHEZ, ROSA MARIA TAPIA, SEMEN
BABADZHANOV AND TATIANA LIAKH,

v.

IN THE SUPERIOR COURT OF
PENNSYLVANIA

- 2 -

J-A11007-16

GREYHOUND LINES, INC., SABRINA ANDERSON, FIRSTGROUP AMERICA, C.A.V. ENTERPRISES, LLC, AKOS GUBICA AND KAROLY GUBICA,

APPEAL OF: GREYHOUND LINES, INC. AND SABRINA ANDERSON

No. 1174 EDA 2015

Appeal from the Order Entered April 1, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 131202598, 140402946

JOSEPH HOANG AND KENNETH ROTHWEILER, ESQUIRE, CO-ADMINISTRATORS OF THE ESTATE OF SON THI THANH HOANG, DECEASED, AND FAITHLEE BROWN, FNU SAIFULLAH AND KEITH PRESSMAN AND CHARLES REID AND MICHAEL KETCHPAW AND SURAJ BALAKRISHNAN AND AHMED ALJAHMI AND HIREN PATEL AND ERIC KJELLERSTEDT AND GUSTAV FREDERIKSEN AND BARBARA YEAGER-DOYLE AND BRANDON OSBORN AND ELORA LENCOSKI AND WILLIAM KOOMSON AND GLORIA KOOMSON, H/W,

Appellees

v.

GREYHOUND LINES, INC. AND SABRINA ANDERSON AND FIRSTGROUP AMERICA AND C.A.V. ENTERPRISES, INC., AND AKOS GUBICA AND KAROLY GUBICA,

APPEAL OF: GREYHOUND LINES, INC. AND SABRINA ANDERSON

IN THE SUPERIOR COURT OF PENNSYLVANIA

- 3 -

No. 1602 EDA 2015

Appeal from the Order Entered April 24, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 131202598 Dec. Term 2013

JOSEPH HOANG AND KENNETH ROTHWEILER, ESQUIRE, CO-ADMINISTRATORS OF THE ESTATE OF SON THI THANH HOANG, DECEASED, AND FAITHLEE BROWN AND FNU SAIFULLAH AND KEITH PRESSMAN AND CHARLES REID AND MICHAEL KETCHPAW AND SURAJ BALAKRISHNAN AND AHMED ALJAHMI AND HIREN PATEL AND ERIC KJELLERSTEDT AND GUSTAV FREDERIKSEN AND BARBARA YEAGER-DOYLE AND BRANDON OSBORN AND ELORA LENCOSKI AND WILLIAM KOOMSON AND GLORIA KOOMSON, H/W,

Appellees

v.

GREYHOUND LINES, INC. AND SABRINA ANDERSON AND FIRSTGROUP AMERICA,

v.

C.A.V. ENTERPRISES, INC. AND AKOS GUBICA AND KAROLY GUBICA,

APPEAL OF: FIRSTGROUP AMERICA

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 1866 EDA 2015

Appeal from the Order Entered June 1, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 131202598, 140402946 (consolidated)

- 4 -

MANAJA LIVINGSTON, DAREN SHIN, ROSAURA SANCHEZ, HECTOR AMADO SANCHEZ, ROSA MARIA TAPIA, SEMEN BABADZHANOV, TATIANA LIAKH,

Appellees

v.

GREYHOUND LINES, INC. AND SABRINA ANDERSON AND FIRSTGROUP AMERICA AND C.A.V. ENTERPRISES, LLC, AKOS GUBICA AND KAROLY GUBICA,

APPEAL OF: GREYHOUND LINES, INC. AND SABRINA ANDERSON

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 1879 EDA 2015

Appeal from the Order Entered June 3, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): April Term 2014 No. 140402946

JOSEPH HOANG AND KENNETH ROTHWEILER, ESQUIRE, CO-ADMINISTRATORS OF THE ESTATE OF SON THI THANH HOANG, DECEASED, AND FAITHLEE BROWN, FNU SAIFULLAH, KEITH PRESSMAN, CHARLES REID, MICHAEL KETCHPAW, SURAJ BALAKRISHNAN, AHMED ALJAHMI, HIREN PATEL, ERIC KJELLSERSTEDT, GUSTAV FREDERIKSEN, BARBARA YEAGER-DOYLE, BRANDON OSBORN, ELORA LENCOSKI, WILLIAM KOOMSON AND GLORIA KOOMSON, H/W,

Appellees

v.

IN THE SUPERIOR COURT OF PENNSYLVANIA

- 5 -

J-A11007-16

GREYHOUND LINES, INC. AND SABRINA
ANDERSON AND FIRSTGROUP AMERICA
C.A.V. ENTERPRISES, INC., AKOS
GUBICA, KAROLY GUBICA,

APPEAL OF: GREYHOUND LINES, INC.
AND SABRINA ANDERSON

No. 1931 EDA 2015

Appeal from the Order Entered June 1, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): December Term, 2013, No. 131202598

JOSEPH HOANG AND KENNETH
ROTHWEILER, ESQUIRE, CO-
ADMINISTRATORS OF THE ESTATE OF
SON THI THANH HOANG, DECEASED,
AND FAITHLEE BROWN, FNU SAIFULLAH,
KEITH PRESSMAN, CHARLES REID,
MICHAEL KETCHPAW, SURAJ
BALAKRISHNAN, AHMED ALJAHMI,
HIREN PATEL, ERIC KJELLSERSTEDT,
GUSTAV FREDERIKSEN, BARBARA
YEAGER-DOYLE, BRANDON OSBORN,
ELORA LENCOSKI, WILLIAM KOOMSON
AND GLORIA KOOMSON, H/W,

      Appellees

     v.

GREYHOUND LINES, INC. AND SABRINA
ANDERSON AND FIRSTGROUP AMERICA
C.A.V. ENTERPRISES, INC., AKOS
GUBICA, KAROLY GUBICA,

APPEAL OF: GREYHOUND LINES, INC.
AND SABRINA ANDERSON

IN THE SUPERIOR COURT OF
PENNSYLVANIA

- 6 -

J-A11007-16

No. 1932 EDA 2015

Appeal from the Order Entered June 3, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): December Term, 2013, No. 131202598

BEFORE:  SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

OPINION BY SHOGAN, J.:                                    **FILED MAY 24, 2016**

The underlying action arises from an October 9, 2013, motor vehicle accident between a Greyhound Lines, Inc. ("Greyhound") bus driven by Sabrina Anderson ("Bus Driver") and a tractor-trailer.  Plaintiffs-Appellees were passengers on the bus and have alleged injuries as a result of the accident.  The instant appeals are from four pretrial discovery orders in the underlying consolidated cases.  For the reasons that follow, we affirm.

### Factual and Procedural History

The complaints allege that Bus Driver was operating a Greyhound bus westbound on Interstate 80 in Union County, Pennsylvania, on October 9, 2013, traveling from New York City to Cleveland, Ohio.  Complaint, 12/19/13, at 5 ("Hoang action");[1] Complaint, 4/25/14, at 3 ("Livingston

_____

[*]  Former Justice specially assigned to the Superior Court.

[1]  The Hoang estate is the first-named plaintiff in the action filed on December 19, 2013.

- 7 -

action").[2]  The complaints aver that FirstGroup America ("FirstGroup") owns, operates, and/or controls Greyhound (collectively with Bus Driver, "Appellants").  Complaint, 12/19/13, at 4; Complaint, 4/25/14, at 2.  The bus allegedly rear-ended a tractor-trailer lacking working headlights, taillights, hazard lights, or reflectors that was operated by additional defendant Akos Gubica and owned by additional defendants Karoly Gubica or C.A.V. Enterprises, LLC, or both.  Third Party Complaint, 7/2/14, at ¶¶ 7–9.  Forty-two plaintiffs (collectively "Passengers") filed personal injury actions in Pennsylvania, New York, Ohio, and Texas against Greyhound.[3]  The Hoang action was filed in the Philadelphia Court of Common Pleas on December 19, 2013.  The Livingston action was filed in that court on April 25, 2014.  The cases were consolidated on October 1, 2014.

Greyhound removed the action to the United States District Court for the Eastern District on January 13, 2014; the district court remanded to the Philadelphia Court of Common Pleas on June 19, 2014.  Passengers sought a preliminary injunction on July 1, 2014, which the trial court granted on August 20, 2014.  Pursuant to the injunction, all items impounded by the

---

[2]  Manaja Livingston is the first-named plaintiff in the action filed on April 25, 2014.

[3]  The complaint filed December 19, 2013, also includes a wrongful death and survival claim brought by the estate of Son Thi Thanh Hoang, who lived in Vietnam.  Complaint, 12/19/13.

state police were ordered to be released to the parties for inspection. Trial Court Opinion, 10/30/15, at 1.

On January 8, 2015, Passengers filed a "Third Set of Document Requests to Defendant FirstGroup America (Regarding claim files and investigation)" seeking the contents of claim files, correspondence, and emails discussing the bus accident that were sent to or from any individual employed by Gallagher Bassett ("Gallagher"), a third-party adjustment company which contractually handled claims and investigations for Appellants Greyhound and FirstGroup. On February 19, 2015, Passengers filed a "Fourth Set of Document Requests for Production of Documents Addressed to Defendants Greyhound Lines, Inc. and FirstGroup America." Appellants objected on the basis that the materials are confidential under the attorney-client privilege and work-product privilege.

On March 4, 2015, the trial court entered an order granting the discovery requests, in part. The order provided, in pertinent part, "With respect to any material objected to on the basis of privilege, a privilege log shall be provided to all parties and the redacted and unredacted documents submitted to the court for *in camera* review within twenty days." Order, 3/4/15, at 1. The documents, numbering into the thousands, were submitted. Trial Court Opinion, 10/30/15, at 4.

As a result of that review, the trial court entered three of the four orders on appeal on April 1, 2015, April 24, 2015, and June 1, 2015. The

fourth order appealed relates to Passengers' motion seeking production of a video of a practice deposition, a/k/a a "mock deposition," of Bus Driver that the trial court previously had ordered to be produced in the April 1, 2015 order. The videotaped mock deposition of Bus Driver had never been disclosed on any privilege log. When Appellants refused to produce the video, the trial court held oral argument on May 26, 2015, and directed, by undated order docketed on June 3, 2015, the production of the "practice" deposition. Undated Order docketed 6/3/15, at 1. Appellants appealed, and that appeal was consolidated with the other three appeals.

Specifically, Bus Driver and Greyhound filed notices of appeal on April 16, 2015, from the April 1, 2015 order, on May 21, 2015, from the April 24, 2015 order, on June 10, 2015, from the June 1, 2015 order, and on June 10, 2015, from the order docketed on June 3, 2015. FirstGroup also filed notices of appeal. The trial court ordered compliance with Pa.R.A.P. 1925 relating to the appeals from the April 1, 2015, and April 24, 2015 orders, and Greyhound and Bus Driver complied on May 8, 2015, and June 17, 2015, respectively. The trial court did not order concise statements in the appeals from the June 1, 2015, and June 3, 2015 orders.

Greyhound and Bus Driver raise the following issues on appeal:

> 1. Are communications between counsel for a party and the party's claims administrator, which hired counsel, protected by the attorney-client privilege?

2. In the alternative are communications between counsel for a party and a claims administrator who is investigating the case on counsel's behalf, protected by the attorney-client privilege?

3. Are documents of a claims administrator which contain mental impressions, conclusions, opinions, memoranda, notes or summaries, legal research, legal theories or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics protected by the work product privilege?

Greyhound's Brief at 24.

FirstGroup raises the following issues on appeal:

A. Whether the trial court misapprehended the relationship between Gallagher Bassett and i[t]s attorneys and improperly compelled the production of claims notes containing both verbatim recitations and summaries of confidential communications made between Galla[g]her Bassett and its attorneys, in direct contravention of the protections afforded by 42 Pa.C.S. § 5928.

B. Whether in interpreting the work product privilege, the trial court improperly refused to protect not only mental impressions, conclusions or impressions of Galla[g]her Bassett but also opinions and conclusions relating to the defense, strategy and tactics of the defense, in contravention of the protections afforded by Pa.R.C.P. 4003.3, thus amounting to an error of law and/or abuse of discretion by the trial court.

C. Whether the mock deposition of [Bus Driver], undertaken by her counsel for the purpose of preparing her for deposition, is protected by the attorney-client privilege such that the court order requiring its production amounts to an error or law and/or abuse of discretion by the trial court.

FirstGroup's Brief at 21–22.[4]

## Jurisdiction

Before examining the merits of this appeal, we address the question of whether we have jurisdiction to entertain it. As noted, these appeals are from pretrial discovery orders that have been consolidated. The issues relate to Appellants' claims that they must produce materials that are confidential under the attorney-client privilege and work-product privilege. The appealed orders are asserted to be collateral orders separate from the claims in the underlying actions.

While Passengers do not assail this Court's jurisdiction, Greyhound maintains these are interlocutory appeals as of right from discovery orders concerning privilege. Greyhound's Brief at 28. FirstGroup includes a Statement of Reasons to Allow an Appeal in its brief, citing *Law Office of Douglas T. Harris v. Phila. Waterfront Partners, LP.*, 957 A.2d 1223 (Pa. Super. 2007). FirstGroup's Brief at 28–29. In that case, this Court discussed the collateral order doctrine and its application to discovery orders compelling the production of documents, as follows:

---

[4] FirstGroup flagrantly violates Pa.R.A.P. 2116(a) in its response to each question it presents. Not only does it quote the court below in violation of the Rule, it also presents argument concerning the issues. FirstGroup's Brief at 21–22.

> In order for an interlocutory order to be deemed collateral, there must be an order collateral to the main cause of action; the right involved must be too important for review to be denied; and the question presented must be such that if review is postponed until final judgment the claim will be irreparably lost. ***Ben v. Schwartz***, 556 Pa. 475, 729 A.2d 547, 550 (1999), citing Pa.R.A.P. 313(b). A discovery order is collateral only when it is separate and distinct from the underlying cause of action. ***Id***. at 551. In determining whether the right involved is too important to be denied review, it must be determined whether the right is deeply rooted in public policy such that it goes beyond the controversy at hand. ***Id***. at 552. Finally, there must be no effective means of review available after an Order requiring the production of documents is reduced to judgment. ***Id***., citing ***Kelly v. Ford Motor Co.***, 110 F.3d 954, 964 (3d. Cir.1997).

***Id***. at 1227–1228 (citing ***Feldman v. Ide***, 915 A.2d 1208, 1210–1211 (Pa. Super. 2007)). We noted therein that "[t]his Court has previously considered the merits of an appeal from a discovery order requiring the production of documents where there is a 'colorable claim of attorney-client privilege which made appellate review proper' at this stage of the proceedings." ***Id***. at 1228.

In support of this Court's jurisdiction to entertain this appeal, we rely upon ***Yocabet v. UPMC Presbyterian***, 119 A.3d 1012 (Pa. Super. 2015), where this Court addressed two pretrial appeals of discovery orders in medical malpractice cases involving the peer-review privilege, concluded that we had jurisdiction, and stated:

> We conclude that we have jurisdiction herein, even though the orders in question are non-final. When a party is ordered to produce materials purportedly subject to a privilege, we have jurisdiction under Pa.R.A.P. 313, which outlines the collateral order doctrine. Pa.R.A.P. 313(b) ("A collateral order is an order

separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."); *see Dodson v. DeLeo*, 872 A.2d 1237 (Pa. Super. 2005) (where trial court ordered party to produce materials allegedly protected by the Peer Review Protection Act, order was collateral order); *Law Office of Douglas T. Harris, Esquire v. Philadelphia Waterfront Partners, LP*, 957 A.2d 1223 (Pa. Super. 2008) (Pursuant to Pa.R.A.P. 313, where appealing party makes colorable claim that attorney-client privilege applies, we will review merits of order requiring disclosure). In *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999), our Supreme Court ruled that orders refusing to apply a claimed privilege were immediately appealable as collateral orders. In *Commonwealth v. Harris*, 612 Pa. 576, 32 A.3d 243, 252 (2011), our Supreme Court re-affirmed that "orders overruling claims of privilege and requiring disclosure are immediately appealable under Pa.R.A.P. 313" despite the United States Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009), which disallows such appeals in the federal system. *See also Commonwealth v. Williams*, 624 Pa. 405, 86 A.3d 771 (2014) (reviewing propriety of order from PCRA court compelling Commonwealth to produce materials that it contended were protected under work product doctrine); *In re Thirty–Third Statewide Investigating Grand Jury*, 624 Pa. 361, 86 A.3d 204, 215 (2014) (reviewing orders that purportedly violated attorney-client privilege and other statutory privileges).

*Id*. at 1016 n.1. *See also Commonwealth v. Flor*, __ A.3d __, __, 2016 WL 1627524, 708 CAP (Pa. 2016)(filed April 25, 2016) ("discovery orders rejecting claims of privilege and requiring disclosure constitute collateral orders that are immediately appealable under [Pa.R.A.P.] 313. [*Commonwealth v. Harris*,] 32 A.3d [243, 251 [(Pa. 2011)] ('We reaffirm our holding in *Ben v. Schwartz*, 729 A.2d 547 (Pa. 1999), that orders overruling claims of privilege and requiring disclosure are immediately

appealable under Pa.R.A.P. 313.'); **see also Williams**, 86 A.3d at 780 ('This Court has moved towards a category-wide exception to discovery orders that are alleged to violate a protected privilege, such as the attorney-client privilege or the work product doctrine.')."

We agree with FirstGroup that the attorney-client and work-product privileges implicate rights rooted in public policy concerns and that the claims will be irreparably lost if review is postponed. Thus, having decided that 1) the discovery orders are separable from, and collateral to, the main causes of action; 2) the right involved is too important to be denied review; and 3) the question presented is such that if review is postponed until after final judgment, the claim will be irreparably lost; we conclude we have jurisdiction of the appeals. **Custom Designs & Mfg. Co. v. Sherwin-Williams Co.**, 39 A.3d 372, 375–376 (Pa. Super. 2012) (orders overruling claims of privilege and requiring disclosure are immediately appealable; orders granting discovery in the face of colorable claims of attorney-client privilege are appealable under the collateral order doctrine); **see also Flor**, ___ A.3d at ___, 2016 WL 1627524 at *4 ("To limit the scope of collateral review, mindful that our precedent cautions against permitting the collateral order doctrine to become an exception that swallows the rule, we require the three-prong collateral order test to be met for each individual issue that an appellate court reviews upon collateral appeal. **Rae** [**v. Pennsylvania Funeral Directors Ass'n**, 977 A.2d 1121, 1130 (Pa. 2009)] (holding that

'the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313')."

## Standard of Review

"Whether the attorney-client privilege or the work product doctrine protects a communication from disclosure is a question of law." *In re Thirty–Third Statewide Investigating Grand Jury*, 86 A.3d 204, 215 (Pa. 2014). Indeed, the attorney-client privilege is now embodied in a statute. *See* 42 Pa.C.S. § 5928 ("In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."). Where "the issue is the proper interpretation of a statute, it poses a question of law," as well. *Phoenixville Hosp. v. Workers' Compensation Appeal Board*, 81 A.3d 830, 838 (Pa. 2013). Thus, the standard of review is *de novo*, and the scope of review is plenary. *Flor*, ___ A.3d at ___, 2016 WL 1627524 at *3; *Yocabet*, 119 A.3d at 1019.

## Attorney-Client Privilege and Work-Product Doctrine

"It is beyond peradventure that Pennsylvania law protects the attorney-client privilege and recognizes it as 'the most revered of the common law privileges.'" *Flor*, ___ A.3d at ___, 2016 WL 1627524 at *6. In an appeal selected to determine the appropriate scope of the attorney-client

privilege in Pennsylvania, our Supreme Court noted that the attorney-client privilege derives from the common law but is also codified at 42 Pa.C.S. § 5928. *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 50 (Pa. 2011); *Yocabet*, 119 A.3d at 1027. Acknowledging the prior inconsistent approaches taken by Pennsylvania courts, the *Gillard* majority opined that the disharmony presumably related "to the ongoing tension between the two strong, competing interests-of-justice factors in play—namely—the encouragement of trust and candid communication between lawyers and their clients, and the accessibility of material evidence to further the truth-determining process." *Gillard*, 15 A.3d at 56–57 (internal citation omitted).

More recently, in *Yocabet*, this Court stated:

"The attorney-client privilege is intended to foster candid communications between counsel and client, so that counsel may provide legal advice based upon the most complete information from the client." [*Thirty–Third Statewide Investigating Grand Jury*, 86 A.3d at 216]. Since the purpose of the attorney-client privilege "is to create an atmosphere that will encourage confidence and dialogue between attorney and client, the privilege is founded upon a policy extrinsic to the protection of the fact-finding process." *Id.* at 216–17. The actual beneficiary of this policy is not only the client but also the justice system, which "depends on frank and open client-attorney communication." *Id.* at 217.

For a party to invoke the privilege, the following elements must be established:

1) The asserted holder of the privilege is or sought to become a client.

2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

***Red Vision Systems, Inc.*** [***v. National Real Estate Information Services, L.P.***, 108 A.3d 54, 62–63 (Pa. Super. 2015)] (citation omitted).  Additionally, when "the client is a corporation, the privilege extends to communications between its attorney and agents or employees authorized to act on the corporation's behalf."  ***Id****.* at 60 (citation omitted).

***Yocabet***, 119 A.3d at 1027.

An attorney's work product is also protected from compelled disclosure by Pennsylvania law.  "This protection promotes our adversarial system 'by enabling attorneys to prepare cases without fear that their work product will be used against their clients.'  Indeed, we have characterized the work product doctrine as 'one of the most fundamental tenets of our system of jurisprudence.'"  ***Flor***, __ A.3d at __, 2016 WL 1627524 at *6 (internal citatios omitted).  The ***Flor*** Court recently described the work-product doctrine as follows:

The work product doctrine, which the U.S. Supreme Court has described as a "qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation,'" ***see Commonwealth v. Williams***, 86 A.3d 771, 782

n.6 (Pa. 2014) (quoting **United States v. Nobles**, 422 U.S. 225, 237-38 (1975)), exempts from discovery certain types of documents.  **See** Pa.R.Crim.P. 573(G) (defining the work product doctrine as barring disclosure "of legal research or of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the attorney . . . or members of their legal staffs").

**Flor**, ___ A.3d at ___ n.6, 2016 WL 1627524 at * n.6.

Pennsylvania Rules of Civil Procedure also provide as follows:

Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney . . . insurer or agent.  The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories.  With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. 4003.3.

### Greyhound's Appeal

Greyhound's first issue asserts that "communications between counsel for a party and the party's claims administrator, which hired counsel, [are] protected by the attorney-client privilege."  Greyhound's Brief at 24.  Review of Greyhound's brief reveals that Greyhound makes no argument on this issue; it merely recites excerpts from cases that describe the attorney-client privilege.  We consider this issue abandoned, as Greyhound advances no argument for this Court to address.  **Banfield v. Cortes**, 110 A.3d 155, 168

- 19 -

n.11 (Pa. 2015) ("Where an appellate brief . . . fails to develop the issue in any . . . meaningful fashion capable of review, that claim is waived.  It is not the obligation of an appellate court to formulate an appellant's arguments for him.") (citing **Wirth v. Commonwealth**, 95 A.3d 822, 837 (Pa. 2014)).

To the extent we might find a particularized argument by Greyhound assailing the trial court's reliance on Pa.R.C.P. 4003.4 in ordering production of the "practice" deposition of Bus Driver, we note the following.

The issue concerning Bus Driver's videotaped statement arose during a discovery hearing on May 26, 2015.  The following exchange occurred:

> THE COURT:    Now, Rule 4003.4, upon written request a party is entitled to immediate receipt of a statement concerning the action or its subject matter previously made by that party, any other party or a witness.  A statement previously made is a written statement signed or otherwise adopted or approved by the person making it or a stenographic or other recording which is a substantially verbatim recital of an oral statement made by the person making it and contemporaneously recorded.
>
> In reviewing the document, it's appeared that there was such a document from [Bus Driver] created at the request of counsel and that was not submitted for in-camera review.
>
> Has that been turned over?
>
> [COUNSEL FOR GREYHOUND]:    It has not been turned over, Your Honor.
>
> THE COURT:    On what possible basis has that not been turned over nor turned over to the Court for in-camera review?
>
> [COUNSEL FOR GREYHOUND]:    Your Honor, the recording was created through counsel interviewing [Bus Driver], that it was not a document that was created or maintained or

kept by Gallagher Bassett, and the documents that were turned over to the [c]ourt pursuant to the [c]ourt's order were the documents that were in the possession of Gallagher Bassett. This recording was—it is a recording of a conversation or questions posed to [Bus Driver] and her responses.

THE COURT: It was also sent to either Gallagher Bassett or Greyhound, wasn't it?

[COUNSEL FOR GREYHOUND]: Your Honor, I do not believe that was.

THE COURT: That's the only way I learned of it was that it was referenced as being sent.

[COUNSEL FOR GREYHOUND]: It was referenced that it would be sent. My understanding, Your Honor, is that it was never sent. But that's—

THE COURT: On what basis—that's irrelevant. On what basis has that not been turned over when I am sure counsel has asked, plaintiffs' counsel, has asked for statements?

[COUNSEL FOR GREYHOUND]: Attorney client privilege, Your Honor.

THE COURT: Then on what basis was it not submitted to the [c]ourt as part of your supposed complete privilege log?

[COUNSEL FOR GREYHOUND]: The privilege log was created as to documents that were maintained by Gallagher Bassett. In full disclosure to the [c]ourt, Your Honor, I only received a copy of that recording within the last few weeks after your April 1st order.

THE COURT: Is it a reproduction of a statement concerning the action or its subject matter previously made by [Bus Driver]?

[COUNSEL FOR GREYHOUND]: It is a recording, yes, Your Honor.

- 21 -

THE COURT: Is it a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded?

[COUNSEL FOR GREYHOUND]: It is a recording, Your Honor, yes.

THE COURT: It is my understanding from reading what was provided and claimed privilege that it is a deposition preparation that was recorded as [Bus Driver] was being prepared for her deposition in some other case. Right?

[COUNSEL FOR GREYHOUND]: Correct, Your Honor.

THE COURT: You are claiming this is protected by attorney-client privilege?

[COUNSEL FOR GREYHOUND]: We are, Your Honor.

THE COURT: You are ordered to turn it over within five days. Today is Monday. By Friday at 5 o'clock.

So that the record is clear, knowing that such a reproduction of a statement concerning the action or its subject matter made by the driver which is substantially a verbatim recital of an oral statement by the person making it and contemporaneously recorded as set forth in Rule 4003.4, knowing that, are you asking for it?

[COUNSEL FOR PASSENGERS]: Yes, Your Honor.

THE COURT: Friday at 5:00, please.

N.T., 5/26/15, at 13–17.

In its opinion explaining its order directing Greyhound to produce the statement, the trial court relied upon Pa.R.C.P. 4003.4, which provides, in pertinent part as follows:

Rule 4003.4. Scope of Discovery. Trial Preparation Material. Statements

- 22 -

Upon written request, a party is entitled to immediate receipt of a photostatic copy or like reproduction of a statement concerning the action or its subject matter previously made by that party, any other party or a witness. Upon written request, a person not a party is entitled to immediate receipt of a photostatic copy or like reproduction of a statement concerning the action or its subject matter previously made by that person. If the statement is not so provided, the party or person may move for a court order. For purposes of this rule, a statement previously made is

\* \* \*

(2) a stenographic, mechanical, electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

EXPLANATORY COMMENT--1978

\* \* \*

The Rule covers all forms of statements, including signed statements, recordings and transcriptions.

Pa.R.C.P. 4003.4, cmt. 1978; Trial Court Opinion 10/6/15, at 2. Greyhound avers that the trial court erred in ignoring Pa.R.C.P. 4003.1 "Scope of Discovery Generally. Opinions and Contentions," which provides, in pertinent part, that subject to Rules 4003.2 to 4003.5, "**a party may obtain discovery regarding any matter, not privileged**, which is relevant" to the pending action. *Id*. (emphasis added). Greyhound's Brief at 32–33.

The trial court noted that it was unclear with whom the videotape was shared. Trial Court Opinion, 10/6/15, at 1–2. "It is however clear that a court reporter and videographer were present during the taking of the statement" of Bus Driver. *Id*. at 2. The trial court concluded that "a

recorded statement, videoed by a third party, transcribed by a Court Reporter is clearly within [the definition of a] discoverable statement identified by Rule 4003.4." *Id*. at 3 (footnote omitted).

Passengers maintain that Bus Driver's videotaped statement is akin to Appellants taking a statement at the scene. Passengers' Brief at 12. They assert that Appellants do not dispute the proposition that the videotaped statement is a "statement." *Id*. at 27. The mock deposition was conducted so that Bus Driver's counsel would know what Bus Driver would say at her deposition. As Passengers note, the entire exercise "was to elicit information that was intended to be disclosed to other parties." Passengers' Brief at 28. Passengers posit that the information conveyed by Bus Driver "was never intended to be confidential." *Id*. at 28. We agree.

Greyhound, as the party asserting attorney-client privilege, "bears the initial burden of producing sufficient facts to show that it has properly invoked the privilege for the communications that it has declined to disclose." *Custom Designs*, 39 A.3d at 379. As noted by the trial court, it is "clear that a court reporter and videographer were present during the taking of the statement . . . ." Trial Court Opinion, 10/6/15, at 2. Thus, as Passengers urge, and in the absence of an affidavit, statement, or testimony in support of the circumstances, Greyhound has not demonstrated that Bus Driver had a reasonable expectation that the videotaped statement would remain confidential. Passengers' Brief at 30–31. *See Custom Designs*, 39

A.3d at 379 (failure to present affidavit, statement, or testimony to clarify circumstances under which communication was made supports conclusion that party asserting attorney-client privilege failed to sustain its initial burden of proof). Therefore, even if we could find sufficient particularity in Greyhound's brief regarding this issue to avoid waiver, we would conclude that it failed to sustain its burden of proof regarding the assertion of privilege as to the mock deposition tape.[5]

In its second issue, Greyhound purports to raise the issue of whether the communications between its counsel and Gallagher, a claims administrator investigating the case on counsel's behalf, are protected by the attorney-client privilege. Beyond reference to purported relevant case law, Greyhound's entire argument avers that Bus Driver's practice deposition "is protected by the attorney-client privilege, as is any document in the materials under seal which report a communication between Kane Pugh,[6] any other attorney for Greyhound, and Gallagher Bassett." Greyhound's Brief at 38. It cites a number of cases, merely setting forth a holding, without any explanation as to how the case is relevant or controlling to the instant case. There is no analysis of relevant cases. Greyhound does not

---

[5]  We further note that the videotape is not in the voluminous record certified to this Court.

[6]  Kane, Pugh, Knoell, Troy & Kramer, LLP, is the law firm representing Greyhound and Bus Driver.

assail the reasoning of the trial court. Once again, there is no argument to address, and we find the issue waived. ***Banfield v. Cortes***, 110 A.3d at 168 n.11; ***In re Estate of Schumacher***, 133 A.3d 45 (Pa. Super. 2016) (failure to develop argument in brief waives issue).

Finally, Greyhound purports to raise the issue of whether documents of a claims administrator which contain "mental impressions, conclusions, opinions, memoranda, notes or summaries, legal research, legal theories or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics" are protected by the work-product privilege. Greyhound's Brief at 38. Once again, the brief fails to make any particularized argument and merely asserts general principals relating to the attorney-client privilege and the protections afforded to mental impressions under Pa.R.C.P. 4003. Greyhound posits that it "incorporate[s] by reference the arguments made in the brief of FirstGroup America." Greyhound's Brief at 40. To the extent Greyhound attempted to raise a third issue in its brief, we find the claim waived. ***Banfield***, 110 A.3d at 168 n.11.

### FirstGroup's Appeal

Because issues A and B are intertwined, we address them together. FirstGroup argues that the trial court failed to "appropriately" apply the attorney-client and work-product privileges. FirstGroup's Brief at 30, 36. Moreover, it maintains that contrary to the trial court's opinion, Appellants

did not misconstrue the privileges afforded by 42 Pa.C.S. § 5928 or Pa.R.C.P. 4003.3. *Id*. at 26.

FirstGroup contends that many of the "investigative materials" that the trial court ordered Appellants to produce were, in fact, verbatim recitations and/or summaries of confidential communications from defense counsel to Gallagher that were protected by the attorney-client privilege. Thus, it avers, the production of these confidential communications was an abuse of discretion by the trial court. FirstGroup's Brief at 30. FirstGroup asserts that confidential communications between counsel and Gallagher should have been afforded the protection of the attorney-client privilege because unlike an insurance company, Gallagher "is in a unique position and serves as a direct arm of Greyhound." *Id*. at 32. FirstGroup suggests that because Greyhound is self-insured and directs its own litigation defense, "risk management functions have been contractually outsourced to [Gallagher], which at all times acts on behalf of [Greyhound]." *Id*. Thus, FirstGroup contends that because Gallagher was defense counsel's "client representative," information relayed between Gallagher and "its retained defense counsel is subject to the same protections as it would be if that information had been provided directly to [Greyhound]." *Id*. at 32–33. It cites no case in support of this contention. *Id*.

FirstGroup also challenges disclosure of documents on the basis of the work-product doctrine, which is "closely related to the attorney-client

privilege" but, according to Appellants, "is broader because it protects any material, regardless of whether it is confidential, prepared by the attorney in anticipation of litigation." FirstGroup's Brief at 36 (citing ***Rhodes v. USAA Cas. Ins. Co.***, 21 A.3d 1253, 1259–1260 (Pa. Super. 2011)). The doctrine, first set forth by the United States Supreme Court in ***Hickman v. Taylor***, 329 U.S. 495 (1947), has been adopted by all states, including Pennsylvania. FirstGroup's Brief at 37 (citing ***National Railroad Passenger Corp. v. Fowler***, 788 A.2d 1053, 1065–1066 (Pa. Cmwlth. 2001)).

FirstGroup contends the trial court erred when it ordered the production of information protected by the work-product doctrine, maintaining that although the materials at issue may at first blush appear merely to be a recitation of investigative efforts of Gallagher, "upon closer inspection it is clear that these documents contain the mental impressions and/or legal theories that Gallagher Bassett intends to utilize in defending against claims made by those injured in the October 9, 2013 bus accident." FirstGroup's Brief at 38–39. FirstGroup, however, never explains this conclusion—and fails to apprise this Court why or how the documents contain mental impressions.

The trial court initially explained its conclusion regarding Appellants' assertion of privilege as follows:

[Appellants] have unreasonably and improperly claimed attorney-client and mental impression privilege of non-attorney representatives to thwart proper discovery. [Appellants] have interpreted the Pa.R.C.P. 4003.3 mental impression privileges to improperly include anything, including original investigation and statements, written by an adjuster. [Appellants] have improperly interpreted the attorney-client privilege to include anything in which an attorney was involved. [Appellants] have interpreted Pa.R.C.P. 4003.3 mental impression privilege to improperly claim privilege upon investigative materials and to resist depositions of defendant personnel and investigative adjusters having distinct and relevant discoverable information. [Appellants] have interpreted the attorney client privilege to improperly include anything, including original investigative material reported to claims and other representatives of defendant Greyhound. Effectively, [Appellants] claim anything contained in the file of Gallagher Bassett, their third party administrator charged with investigating claims is privileged. [Appellant] Greyhound claims that there is no accident investigation file. Greyhound claims that although they run thousands of buses across America, they have no system to investigate accidents to determine their cause. Alternatively, Greyhound claims that if there is any claim anticipated, Greyhound has no system to determine cause except that protected from any disclosure. This facial claim of privilege is unambiguously disingenuous.

Order, 4/1/15, at 1–2.

The trial court "individually reviewed hundreds of documents upon which a claim of Attorney-client or mental impression privilege" was asserted, and it submitted as follows:

Repeatedly recorded in the documents are a description of the location of the bus and statements from passengers. Also documents which are clearly discoverable certain descriptions of injuries of plaintiffs and the procedural litigation status of other cases. Many other document[s] had descriptions and locations of the "Drivecam unit" which records bus movement and the recovery of log data by "LYTX." Among the documents ordered produced are comments concerning the location of the bus,

movement of the bus and one note that the "bus will be destroyed." [Appellants] claim[] privilege for an investigation into [Bus Driver's] phone records and activity on the day of the accident. There is also a description of [Bus Driver's] explanation as to the accident and her medical records.

Other documents ordered produced on which [Appellants] claim[] privilege include:

Identification of potential witnesses.

Identification of "several videos produced with the full Pa State Police Report."

E-mail from Timothy Ryan First Group to others in First Group transmitting police report, identify Tim Ryan "lead claim adjuster Gallagher Bassett Services, Inc./Greyhound Lines, Inc." and transmitting from Justin Bayer to various individuals including Charles Patitucci at AIG.com. Copy of the police report and "six other disks with photos and video recordings."

Letter to Gallagher Bassett Services from CIA Custard Insurance Adjusters containing 164 photographs, a digitally recorded claimant driver statement and a claimant driver statement transcription.

Identification of individuals who interviewed [Bus Driver] including Jimmy Lytle, a regional safety manager, with union representative present.

Preservation of evidence notices including one to a "refurb company."

The location, transportation and possible destruction of the bus involved in the accident.

Description of location and movement of bus, telephone log of driver and voicemail, pre-trip description of bus and failed inspection. Description of location of bus and phone and pre-trip activity.

Efforts to move the bus and summary of testimony at criminal trial.

Description of intention to release the bus.

Statements from passengers on the bus.

Status of Ohio plaintiff cases and the criminal case against Mr. Gubica the driver of the truck which was rear-ended.

Description of testimony in the criminal case.

Identification, location and recovery of data from the "Drivecam unit" or "SD Card" and affidavits concerning these data units. Statement that the damaged drivecam is "in process of repair."

Information that "Drivecam and SD Card" are being held by the police. An affidavit claiming that the system was not operating properly.

Description of removal of BDEC ECM data as testified to in trial and description of other trooper testimony.

Identification that DDEC and CADEC information has been downloaded by the lead criminal investigation investigator.

Identification of and attachment of ORDS (operations report distribution system) bus track report and NYD dispatch register.

Letter to Corporal Schmidt of the Pennsylvania State Police from Patrick J. Shipley re: lytx evaluation and use of memory chip and Drivecam video event recorded.

Letter from Joseph Mordino identifying possible locations of data from CADEC and computer backups.

Witness statements including recorded statements. Identification of interview by State Police with [Bus Driver]. Transcribed recording of statement by passengers on the bus.

The results of Investigation into [Bus Driver's] phone records, logs, and activity on the day of the accident.

Description of statement of [Bus Driver].

Statements attributed to "jail cell roommate" of Mr. Gubica's vehicle which was struck in the rear by the bus. This jail house "roommate" claimed there were admissions from the driver.

Identification of a written witness statement to the police.

Description of information obtained including a direct conversation with the police investigator. A report that on December 31, 2013 the police report was received which did not appear to be a complete report. Description of State Troopers['] investigation including traffic citations for Mr. Gubica and the search warrant.

Description of an inspection of the bus performed on December 20, 2013.

Statement made by [Bus Driver's] treating physician to investigator.

Description of criminal trial testimony.

Description of State Trooper investigation including traffic citation.

Criminal case disposition.

Activities of . . . Mr. Gubica subsequent to the accident.

Description of conversation with Lee Harris, M.D. neurologist.

State Police information concerning the rear-ended truck.

Identification that State Troopers secured the log book. Identification of a video of a defendant driver statements.

Identification of deposition of additional plaintiff.

Scheduling of a deposition.

Copy of a publicly available newspaper article of March 7, 2014. Copies of other publicly available news articles are claimed to be privileged.

E-mail from Tim Ryan identified as "senior claims adjuster Greyhound Lines, Inc./Gallagher Bassett Services, Inc." to other individual of Greyhound and [FirstGroup] including counsel Paul C. Troy.

[E]-mail from Ryan Timothy of First Group identified as senior claims adjustor Greyhound Lines, Inc./Gallagher Bassett Services, Inc. to numerous individuals concerning log.

Identification of adjuster Chandra Diven's report and enclosures.

E-mail from Dex Kemp at Greyhound to James Dixon at Greyhound. Identification of available data re: accident analysis.

E-mail from Christopher Preski at [FirstGroup] to Timothy Ryan at [FirstGroup] and James Dixon at Greyhound re: right hub leaking and maintenance thereto.

E-mail from Christopher Preski [FirstGroup] to First Group and Greyhound re: inspection report.

E-mail concerning "conversations from the field on this accident."

E-mail from Kirk DeBees [FirstGroup] to Greyhound re: medical records.

Summary of facts and investigation from Hill Adjustment Bureau, Inc., to National Union First Insurance re: Greyhound Lines, Inc. insured.

From Gallagher Bassett claims services to "all personnel on distribution list." Investigation into accident including identification of witnesses.

**Also submitted to the court for in camera review was a copied portion of deposition testimony which was not on any privilege log.**[7]

Voided check.

Copy of outside of envelope.

Invoice from Spill Response, Inc.

Copy of Interrogatories in other cases.

Description of collection of "trip envelope" . . . which had been strewn around the collision site" and the identity of Eric Jenkins of Greyhound management who "may" have gathered some of this material from the scene.

Description of a conversation with [Bus Driver's] doctor and a description of criminal trial testimony.

Description of State Troopers investigation including traffic citations for a semi driver.

_____

[7] This reference by the trial court is to the "practice" deposition of Bus Driver that is the subject of FirstGroup's third issue, discussed *infra*.

Conversations with [Bus driver's] doctor including Dr. Scott opinions and cardiologist in Ohio description.

Numerous documents of Milton Fire Dept. statement of invoices for extraction.

Investigation reports.

Collison report.

Crawford and company preliminary scene report.

Recorded statement.

E-mail re: grievance and disciplinary possibilities for defendant driver.

E-mail concerning arbitration decision ordering reinstatement of [Bus Driver].

Deposition summary.

Identity of supervisors and hierarchy reporting chart.

Investigation report update on Ohio case.

Deposition of David Amadon (the privilege objection to all impressions of the deponent were sustained).

Updated report on other lawsuits and investigation.

E-mail from Ernestine McMillin to Joe Mordino, James Dixon re: "forward FWD: [Bus Driver]–depositions in New York" identity of potential witnesses.

History of [Bus Driver's] driving record.

Description of medical records.

E-mail to Greyhound and First Group concerning video which was created of the route taken by the bus and inspection.

> From Joe Hall to James Dixon subject [Bus Driver] 10/9/13 two conversations description of immediate conversations concerning the accident.
>
> Activity from last report including statements by [Bus Driver].
>
> In deciding what was actually privileged among the morass of documents upon which privilege was claimed the [c]ourt meticulously avoided any attorney client material or any product which truly was the work product of an attorney. Additionally, where the material represented the work of party's representative the [c]ourt remained aware of the limitations [of] Pa.R.Civ.P. Rule 4003.3. Unlike under the Federal rules: "a party may obtain discovery of any matter discoverable . . . even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative including his or her attorney . . . ." However, even when certain parts of a document were ordered produced the [c]ourt intentionally excluded any disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes, or summaries, legal research or legal theories." When a document was authored by a claims representative or investigator other than a party's attorney the ordered documents did not include any disclosure of "mental impressions, conclusions, or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics."[5]
>
> [5] Pa.R.Civ.Pro. Civ. P. [sic] 4003.3.

Trial Court Opinion, 10/30/15, at 6–12 (emphasis added; footnote omitted).

We conclude that Appellants failed to carry their burden of proof. Appellants have failed to make any specific argument beyond citing general precepts governing the attorney-client and work-product privileges. Rather than review the trial court's decision "document by document," Appellants merely allege that the trial court erred in its ruling of the thousands of documents submitted for *in camera* review, *en masse*. Indeed, Appellants

fail to provide sufficient detail to support any finding of error by the trial court.

Like the trial court, we decry Appellants' claim that any and all original investigation and statements contained in Gallagher's files is privileged, "including original investigative material reported to claims and other representatives of defendant Greyhound." Trial Court Opinion, 10/30/15, at 6. Such an interpretation of the attorney-client privilege is improper. As represented by the trial court, Appellants "have unreasonably and improperly claimed attorney-client privilege and mental impression privilege of Greyhound claims representatives [in order] to thwart proper discovery." *Id*. at 5. Moreover, because Appellants have failed to challenge the myriad documents meticulously reviewed by the trial court with sufficient detail and challenge, we conclude that the orders of April 1, 2015, April 24, 2015, and June 1, 2015, must be affirmed.[8]

The final challenge by Appellant FirstGroup contends the trial court erred or abused its discretion in ordering the production of Bus Driver's

---

[8]  We note that the procedure adopted by the trial court herein comports with that advanced by Chief Justice Saylor in his Concurring Opinion in *Flor*. Opining that production of a privilege log referencing materials allegedly protected by privilege "would have multiple benefits" including provision to the opposing party of the nature of the materials counsel elected not to disclose, facilitating submission of the documents to the court for *in camera* review, and expediting appellate review should that become necessary. *Flor*, ___ A.3d at ___, 2016 WL 1627524 at *9 (Saylor, C.J., concurring).

mock deposition.[9]   FirstGroup's one-paragraph argument "adopts the argument made by" Greyhound.   FirstGroup's Brief at 39.   Curiously, Greyhound's argument on this issue similarly asserted that "[Greyhound] and [Bus Driver] incorporate by reference the arguments made in the brief of FirstGroup America."   Greyhound's Brief at 40.   In its argument on this issue, FirstGroup merely asserts precepts espousing the purpose of the attorney-client privilege and work-product protections.   FirstGroup's Brief at 39.   It maintains, without supporting citation to case law, that the trial court erred when it "refused to apply the protections that should have been afforded" the videotaped statement.  *Id*. at 40.

We are constrained to conclude that this issue is not before us within FirstGroup's appeal.   While FirstGroup has filed notices of appeal from the orders entered on April 1, 2015, April 24, 2015, and June 1, 2015, FirstGroup has failed to file a notice of appeal from the order docketed on June 3, 2015, relating to the court-ordered production of the mock deposition.   *See Novoseller v. Royal Globe Ins. Companies*, 463 A.2d 1163, 1165 (Pa. Super. 1983) (where the appellant failed to file an appeal from the lower court's order, this Court, at this late date, "will not consider a claim never raised and an appeal never taken.").

_____

[9]   Passengers note that while Greyhound filed a notice of appeal from the order docketed on June 3, 2015, FirstGroup did not appeal the order.

Orders affirmed.[10]

_____

[10] On April 20, 2016, FirstGroup filed in this Court an application for relief seeking to withdraw its appeals in the instant case. FirstGroup based its application on the trial court's February 11, 2016 grant of FirstGroup's motion for summary judgment, which was filed during the pendency of this appeal. We denied the application on May 2, 2016, "without prejudice to re-raise this application for relief following oral argument." Order, 5/2/16, at 1. During oral argument in this Court on May 3, 2016, we permitted FirstGroup to renew its motion to withdraw and to file a supplemental brief in support.

We deny the application for relief based upon Pa.R.A.P. 1701(a), which provides, in pertinent part, that "after an appeal is taken . . . the trial court . . . may no longer proceed further in the matter." We reject FirstGroup's reliance on Rule 1701(c) as support for its application for relief. Its argument is that the issues involved in the present appeal "are ancillary to the matters that remain in the trial court for resolution," thus, the case can proceed. FirstGroup's Supplemental Brief at unnumbered 6. While we concur that the collateral orders appealed herein are ancillary, FirstGroup has asserted, and we have agreed, that we have jurisdiction to hear these appeals under Pa.R.A.P. 313, which outlines the collateral order doctrine. As we noted *supra*, Rule 313(b) provides that "[a] collateral order is an order separable from and collateral to the main cause of action **where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost**." (emphasis added).

FirstGroup cannot have it both ways. It cannot contend that the orders appealed are "too important to be denied review" and the claim could be "irreparably lost," yet aver that the underlying matter may proceed without resolution of the issues appealed. Indeed, in its Statement of Reasons to Allow an Appeal in its main brief, FirstGroup asserted the prejudice that would flow to it if the appeals were not permitted to proceed, as it would be forced to disclose disputed documents. FirstGroup's Brief at 29.

Moreover, FirstGroup's averment that the orders appealed relating to attorney-client privilege and the work-product doctrine are "ancilliary to the issues set forth" in its motion for summary judgment that "a subsidiary's actions can be imputed to a parent corporation" are matters *dehors* the
*(Footnote Continued Next Page)*

Judge Mundy joins the Opinion.

Justice Fitzgerald Concurs in the Result.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Prothonotary


Date: 5/24/2016

---

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯

record.  **Cf.  _Philadelphia Ambulatory Care Center v. Rite Aid_**, 805 A.2d 613 (Pa. Super. 2002) (post-submission communication rejected where this Court lacks any record before us upon which to make any evaluation of court's authority).

Finally, we note that FirstGroup avers that the trial court granted its motion for summary judgment on February 11, 2016, yet it waited more than two months to file its application for relief.  Therefore, we deny FirstGroup's request to withdraw its appeals docketed at 1167 EDA 2015, 1169 EDA 2015, and 1866 EDA 2015.