2019 PA Super 196

| | | |
|---|---|---|
| KAREN NEWSUAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REPUBLIC SERVICES INC., BFI WASTE SERVICES OF PENNSYLVANIA LLC, BFI WASTE SYSTEMS OF NORTH AMERICA LLC, JOSHUA WATSON, MILTON BAKER, CHRISTOPHER GIOVETSIS, MARC BUCKLEY, MIKE ROBERTS AND CHRIS JOBSON, | : | No. 1248 EDA 2018 |
| | : | |
| Appellants | : | |

Appeal from the Order Dated April 11, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): August Term, 2017  No. 000528

BEFORE:   OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                           **Filed June 20, 2019**

Appellants/Defendants (hereafter "Republic Services") file this interlocutory appeal from an adverse discovery-phase ruling in Appellee/Plaintiff Karen Newsuan's (hereafter "Newsuan") personal injury case in which she alleges that Republic Services' negligence caused her serious worksite injury.  At issue is whether the court erred in ruling that neither an attorney-client communications privilege nor an attorney work-product privilege applied to interviews between counsel for Republic Services and 16 non-party Republic Services laborers identified by Newsuan as potential worksite eyewitnesses.

_____

\* Former Justice specially assigned to the Superior Court.

Republic Services claims the privileges attached either because each employee accepted corporate counsel's offer to represent him or her throughout this litigation or, alternatively, because the interviews between its employees and corporate counsel had the singular purpose of preparing it for litigation. In accordance with decisional law recognizing a corporation's privilege over communications solicited from its non-managerial employees by corporate counsel in preparation for trial, we vacate that part of the order requiring disclosure of such communications and corporate counsel's related work product, and we remand for further discovery consistent with this decision.

On August 17, 2015, Karen Newsuan was working for her non-defendant employer as a recycling center facility sorter when a front-end loader crushed her leg, necessitating an above-the-knee amputation. On August 9, 2017, Newsuan commenced a personal injury action against the named defendants claiming their respective negligence as owners, supervisors, or operators caused her injuries.

At the outset of discovery, Newsuan's lawyer asked Republic Services for all contact information and any documented statements of 16 named employees[1] who were working at the recycling center on the day she was injured. Newsuan's lawyer considered the 16 employees potential fact

---

[1] At the time Newsuan requested employee information, seven of the 16 employees had terminated their employment with Republic Services. N.T., 3/20/18, at 14. For the sake of expediency, we refer to all 16 as employee fact witnesses.

witnesses who could testify to both the accident itself and any dangerous conditions, practices, and procedures at the worksite.

Counsel for Republic Services (at times hereinafter, "corporate counsel") did not provide this information. Confronted with Republic Services' consistent refusal to produce employee contact information that it claimed was either irrelevant or privileged, Newsuan filed a Motion to Compel Discovery.

On March 20, 2018, the trial court conducted a hearing, at which corporate counsel began by informing the court that "all of the current [and three of the seven former] employees for Republic Services [who] were working that evening, including the non-supervisory positions, have agreed to be represented by Republic Services as their counsel." N.T. 3/20/18, at 11-12, 14. Corporate counsel, therefore, argued that "Republic Services' representation of the employees" precluded Newsuan from accessing any of them *ex parte*, pursuant to Pennsylvania Rule of Professional Conduct Rule 4.2.[2]

Counsel also invoked attorney-client privilege with respect to communications made during his interview with each employee. Newsuan rejoined that Republic Services' actions violated her rights under Pennsylvania Rule of Professional Conduct 3.4, Fairness to Opposing Party and Counsel,

_____

[2] Pennsylvania Rule of Professional Conduct 4.2 provides that a lawyer shall not communicate about the subject of a suit with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has consent of the other lawyer or is authorized by the court. ***See*** PA ST RPC Rule 4.2

which provides, *inter alia*, that a lawyer shall not unlawfully obstruct another party's access to evidence.

The trial court denied the validity of the purported attorney-client relationship between counsel and the employees. Initially, it opined that Republic Services' counsel had improperly telephoned the prospective witnesses and offered legal services in violation of Pennsylvania Rule of Professional Conduct Rule 7.3.[3] Even more concerning to the court, though, was corporate counsel's failure to explain to the employee witnesses the potential conflict that could arise during his dual representation of corporate employer and employee. Citing Pennsylvania Rule of Professional Conduct 1.7, discussed *infra* in n.4, the court explained:

> [Republic Services'] lawyers admitted in court that they did not inform these current and former employees about any potential conflicts the . . . lawyers may have in representing the companies being sued and at the same time representing the current or former employee fact witnesses who may have information that is adverse to the companies being sued. The Pennsylvania Rules of Professional Conduct require that when a lawyer represents multiple parties who may have adverse interests or loyalties, the

---

[3] Pennsylvania Rule of Professional Conduct 7.3 acknowledges the potential for abuse when a lawyer initiates a targeted communication to a prospective client, particularly "direct in-person, live telephone or real-time electronic contact with someone known to need legal services. These forms of contact subject a person to the private importuning of a trained advocate, in a direct interpersonal encounter. . . . The situation is fraught with the possibility of undue influence, intimidation, and over-reaching." **See** PA ST RPC Rule 7.3, Explanatory Comment [2]. The explanatory comment goes on to explain, "There is far less likelihood that a lawyer would engage in abusive practices . . . in situations in which the lawyer is motivated by considerations other than the lawyer's pecuniary gain." **Id.** at [5].

lawyers must disclose the conflict and make sure that all the parties they represent waive any conflict they have. ([PA ST RPC] 1.7: Conflict of Interest: Current Clients). The lawyers for [Republic Services] did not explain the potential conflict nor did they get informed consent from these fact witnesses to waive any conflicts.

Trial Court Order, 4/11/18, at ¶ 8.

In light of this record, the trial court viewed counsel's actions with respect to the 16 employees as an unfair discovery tactic designed to prevent Newsuan from freely obtaining statements from fact witnesses:

[Republic Services'] lawyers' conduct in refusing to provide contact information of potential fact witnesses in order to contact them first and then offer to represent them for free, effectively foreclosed [Newsuan's] lawyers from fair access to interview these fact witnesses without having Republic Services' lawyers present. Republic Services' lawyers' conduct compromised the fairness in the litigation process by obstructing Newsuan's lawyers' access to evidence. (Pennsylvania Rule of Professional Conduct 3.4, Fairness to Opposing Party and Counsel).

*Id*. at ¶ 10.

The trial court, therefore, entered an order directing Republic Services to perform, *inter alia*, the following tasks:

- Provide all known personal and professional information about the 16 current and/or former employees;

- Provide all written communications and notes of oral interviews occurring prior to corporate counsel's offer of representation, "since these are not attorney-client privileged communications";

- Explain to the 16 employees that corporate counsel has potential conflicts in representing the companies being sued at the same time he is offering to represent current and former employees who are simply fact witnesses. Counsel may not

- 5 -

represent an employee fact witness until that employee signs a written waiver form after receiving proper explanation regarding the conflict. Counsel shall inform Newsuan of which employees have and have not signed a written waiver within 50 days of the court's order;

- Refrain from engaging in any efforts to obstruct Newsuan's lawyers from accessing witnesses or evidence in this case.

Trial Court Order, 4/11/18, at 3-4. The court further directed all counsel to preface any interview of a prospective non-party, fact witness with an advisement that the witness has the right to decline the interview and has no need for a lawyer in this litigation. *Id*. at 4. In the event of such declination, the court explained, the parties could subpoena such witnesses. *Id*.

On April 20, 2018, Republic Services filed the instant interlocutory appeal. Issues raised in its court-ordered Pa.R.A.P. 1925(b) statement and incorporated in its subsequent Statement of Questions Presented are, as follows:

1. When the attorney for a corporate defendant meets with current and former employees of the defendant, and agrees to represent those employees at deposition, may the attorney properly assert attorney-client and work-product privileges as to his meetings with each witness?

2. Is an order requiring disclosure of privileged information properly appealable as a collateral order under Rule 313?

Appellant's brief, at 3.

Initially, we address whether the order before us is appealable as a collateral order under Pa.R.A.P. 313. Our Supreme Court has held that orders overruling claims of privilege and requiring disclosure are immediately

appealable. *See Commonwealth v. Harris*, 32 A.3d 243 (Pa. 2011); *see also Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d. 372 (Pa.Super. 2012). Likewise, the Supreme Court has held that appeals from orders granting discovery in the face of colorable claims of attorney-client privilege are appealable under the collateral order doctrine. *Harris, supra*; *Custom Designs*, *supra* (*citing* *Law Office of Douglas T. Harris, Esquire v. Philadelphia Waterfront Partners, LP,* 957 A.2d 1223, 1228–1229 (Pa.Super. 2008)). Accordingly, we shall consider the merits of the present appeal.

Republic Services claims the trial court erred when it ordered production of witness statements and attorney notes made during counsel's interviews with the 16 employee witnesses. Republic Services maintains the statements represent privileged communications either because counsel and each employee formed a specific attorney-client relationship at the end of the interview or because the employee statements were acquired with the specific purpose of enabling counsel to advise corporate client/employer Republic Services in the present civil suit. Counsel's notes relating to the interviews similarly receive protection under the work product doctrine, Republic Services argues.

Our courts have outlined the parameters of the attorney-client privilege as follows:

"The question of whether attorney-client privilege protects a particular communication from disclosure is a question of law. As such, we employ a *de novo* standard of review and our scope of

review is plenary." *Carbis Walker*, *LLP v. Hill*, *Barth & King*, *LLC*, 930 A.2d 573, 581 (Pa.Super. 2007).

In Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice. *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011); *see* 42 Pa.C.S. § 5928. In describing the purpose of the privilege, we have said: "The attorney-client privilege exists to foster a confidence between attorney and client that will lead to a trusting and open dialogue." *Gocial v. Independence Blue Cross*, 827 A.2d 1216, 1222 (Pa.Super. 2003).

Pennsylvania law imposes a shifting burden of proof in disputes over disclosure of communications allegedly protected by attorney-client privilege. The party invoking a privilege must initially "set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, *e.g.*, because the privilege has been waived or because some exception applies." *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1266 (Pa.Super. 2007) (citations omitted), *aff'd,* 605 Pa. 468, 992 A.2d 65 (2010). Accordingly, "[i]f the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege." *Id.* at 1267.

Four elements must be satisfied in order to invoke successfully the protections of attorney-client privilege:

1) The asserted holder of the privilege is or sought to become a client.
2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.
3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

> 4) The privilege has been claimed and is not waived
> by the client.
>
> *Id.* at 1264 (citations omitted).

> [Where] the attorney-client privilege has been invoked by a
> corporate client[,] our Commonwealth Court has previously
> recognized "this privilege attaches to communications made by
> corporate as well as individual clients." ***Maleski v. Corporate
> Life Insurance Co.,*** 163 Pa.Cmwlth. 36, 641 A.2d 1, 3 (1994)
> (citing ***Upjohn v. United States***, 449 U.S. 383, 101 S.Ct. 677,
> 66 L.Ed.2d 584 (1981)).

***Custom Designs***, 39 A.3d at 376–77.

> [E]stablished Pennsylvania law also makes clear that it is
> the client who owns this privilege: "The purpose of the attorney-
> client privilege is to benefit the client, and accordingly, the client
> is the holder of the privilege." ***Maleski***[, 646 A.2d at 4].
> Additionally, "the right to assert the privilege is that of the client."
> ***Commonwealth v. McKenna***, 206 Pa.Super. 317, 213 A.2d 223,
> 226 (1965) (citing ***Appeal of McNulty***, 135 Pa. 210, 19 A. 936
> (1890)). The traditional canon remains intact, *i.e.*, the client holds
> the attorney-client privilege[.]

***Knopick v. Boyle***, 189 A.3d 432, 440 (Pa.Super. 2018)

As discussed, the trial court determined that neither the employees in

their individual capacities, through counsel, nor Republic Services as corporate

client invoked successfully the attorney-client privilege. While our review of

the record leads us to agree with the court's reliance on pertinent rules of

professional conduct to reject the existence of an attorney-client relationship

formed directly between counsel and the 16 fact witnesses,[4] we depart from

---

[4] We adopt the opinion of the trial court to the extent it denies the attorney-
client relationship because counsel's dual representation of each employee
and the corporation creates a concurrent conflict of interest. Under PA ST RPC
1.7, a lawyer shall not represent a client if the representation involves a

the court's order and opinion to the extent neither acknowledges standing in the corporate client to assert protection of the communications at issue. That is, we find Republic Services possesses a privilege over the communications supplied at the behest of corporate counsel to assist him in advising Republic Services in the present litigation.

In **Gillard**, the Pennsylvania Supreme Court clarified the scope of 42 Pa.C.S. § 5928, Confidential communications to attorney,[5] by holding that

_____

concurrent conflict of interest. A concurrent conflict of interest exists if, *inter alia*, there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client. Pa. ST RPC 1.7(a)(2).

Problematic for Republic Services is the significant risk that an employee fact witness may testify against Republic Services' interest with respect to working conditions at the recycling center. It is foreseeable, for example, that a current or former employee testifies to some deficiency with respect to the formation or enforcement of safety rules or with some other aspect of managerial oversight which would bolster the claim of negligence against the corporate defendant. Confronted with such testimony, counsel must either develop the testimony to advance the client witness's interest at the expense of corporate client, or impeach the client witness for the benefit of the corporate client. In either instance, counsel's responsibility to one client will materially limit his representation of the other client.

Therefore, we agree with the trial court that only upon the employee's informed consent to retain counsel despite the risk of conflict, which consent is accomplished through the employee's completion of a waiver form clearly notifying him or her of the conflict, is a valid attorney-client relationship formed.

[5] Section 5928 of the Judicial Code provides:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client,

"the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Id.* at 59. In eschewing a literal statutory interpretation that would narrow the scope of the privilege to include only client-to-attorney communications, our Supreme Court declared that advancement of the principles underlying the privilege required a broader interpretation protecting attorney-to-client communications as well.

In so deciding, and of particular importance for our present analysis, the Court explained that its approach dovetailed with the rationale expressed in the United States Supreme Court's decision in *Upjohn Co. v. U.S.*, 449 U.S. 383 (1981). Specifically, *Upjohn* held that the attorney-client privilege applied to communications made by Upjohn Corporation's middle and lower-level employees to corporate counsel in response to counsel-drafted questionnaires designed to assist counsel in advising Upjohn in legal matters. Narrowing the scope of the privilege to protect only "control group employee" communications to corporate counsel, the High Court reasoned, would frustrate the purposes of the privilege. *Id.* at 392.

Such purposes include not only enabling "corporate attorneys to formulate sound advice when their client is faced with a specific legal problem"

---

nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.
42 Pa.C.S.A. § 5928.

but also promoting "the valuable efforts of corporate counsel to ensure their client's compliance with the law." *Id.* There may be instances, the Court emphasized, where middle, or even lower, level corporate employees alone have information vital to counsel's mission to provide the corporation with legal advice. *Id*.

This Court, too, has acknowledged that *Upjohn*, while not binding upon courts of this Commonwealth, nevertheless represents persuasive authority whose rationale our courts have adopted. In *Custom Designs*, for example, we reviewed whether the trial court erred in granting a motion to compel discovery of two employee-prepared memoranda in the possession of a corporate defendant who had refused production citing attorney-client privilege. After outlining both the facts and principles involved in *Upjohn*, and acknowledging Pennsylvania state and federal decisions applying *Upjohn* under similar circumstances, we observed:

> The holding in *Upjohn* specifies that communications by corporate employees to corporate counsel may fall within the scope of the attorney-client privilege when they are kept confidential and when they are made at the behest of counsel and with the goal of furthering counsel's provision of legal advice to the client, the corporation.

*Custom Designs*, 39 A.3d at 379.

After setting forth the *Upjohn* framework, however, we determined the corporate defendant/appellant failed to uphold its burden to produce evidence that the memoranda in question had been prepared at the request of corporate counsel for the purpose of enabling counsel to provide legal advice

- 12 -

to the corporation. ***Custom Designs***, 39 A.3d at 379-80. Instead, evidence revealed a solely commercial reason for preparation of the memoranda. Accordingly, we deemed meritless the corporation's claim of attorney-client privilege and affirmed the trial court's order requiring production of the memoranda. ***Id.*** at 380.

Guided by this jurisprudence, we observe from the transcript of the March 20, 2018, hearing that corporate counsel obtained statements from the 16 current and former employees[6] with the singular purpose of providing legal advice to Republic Services with respect to the present litigation. There was no indication from either corporate counsel's narrative to the court or the circumstances of the present case that any employee sought legal consultation or needed legal advice during the interviews. Indeed, the trial court aptly noted that the non-party, fact witness employees had no personal legal interest in the present matter.[7]

---

[6] In consideration of the purpose underlying the privilege, we deem the relevant decisional law equally applicable to communications from both current and former employees in this matter. "The privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." ***Upjohn***, 449 U.S. at 390. Here, nothing in the record distinguishes the two sets of employees with respect to how helpful their communications about their worksite observations would be to corporate counsel in carrying out his task of advising Republic Services. Adopting a broader scope for the privilege in this regard is consistent with the broader scope applied in other aspects.

[7] Because we discern no basis upon which to disagree with the trial court's observations in this regard, we conclude the present situation is not one in

which the absence of so-called "**Upjohn** warnings," **see** *infra*, undermines the corporation's privilege over counsel-employee communications. Regarding such warnings, this Court has stated:

> Although **Upjohn** itself did not involve warnings or a discussion of a lawyer's explanation regarding the scope of his representation, the Supreme Court observed that, under certain situations, information about the extent of the attorney-client relationship between a corporate counsel and an employee might be necessary. As a result of that case, "**Upjohn** warnings" have evolved that specifically inform a corporate employee that corporate counsel represents the corporation and not the individual, and that the corporation possesses the attorney-client privilege. **See** Grace M. Giesel, <u>Upjohn Warnings, the Attorney–Client Privilege, and Principles of Lawyer Ethics: Achieving Harmony</u>, 65 U. Miami L.Rev. 109, 110–111 (Fall 2010).

**Commonwealth v. Schultz**, 133 A.3d 294, 312-14 (Pa. Super. Ct. 2016).

In **Schultz**, a university vice-president consulted with the university's general counsel for purposes of preparing for his grand jury testimony relative to a criminal investigation of a former employee. Counsel believed at the time that she did not represent the vice-president's personal interests, but she failed to apprise him of the limits of her representation or the difference between agency representation and personal representation, nor did she provide **Upjohn** warnings to him. Subsequently, vice-president was charged with perjury, and counsel was subpoenaed to testify regarding the vice-president's communications with her. The trial court denied the vice-president's motion to preclude such testimony pursuant to attorney-client privilege. On appeal, this Court reversed. We determined the vice-president properly asserted attorney-client privilege under such circumstances because he reasonably believed she represented his personal interests for purposes of his grand jury testimony.

Unlike the putative client in **Schultz**—a high-ranking university official who sought representation given his legal exposure in an underlying criminal case against a high-profile university employee—the fact witnesses here neither sought legal advice, consulted with corporate counsel regarding personal legal matters, nor had any apparent need for legal representation regarding the present litigation. Instead, it is undisputed that corporate counsel initiated contact with the witnesses, identified himself as counsel for Republic Services,

- 14 -

Furthermore, counsel made manifest to the employees the overarching corporate-interest purpose of the interviews when he informed them that Republic Services would also provide them with counsel during the litigation. Finally, while the resultant attorney-client relationship that counsel and the employees believed they had formed with one another was, as discussed above, invalid for reasons of potential conflict of interest without informed consent, we nevertheless find that their apparent agreement to keep their communications confidential satisfies the confidentiality requirement expressed in *Upjohn*.

Accordingly, we conclude the particular communications shared between Republic Services' employees and corporate counsel fall within Republic Services' scope of attorney-client privilege. We, therefore, vacate the trial court's order requiring Republic Services to disclose such communications.

Given the learned trial court's appropriate concerns, however, that corporate counsel's handling of the 16 employees had—whether or not by design—the effect of blocking Newsuan's access to factual statements pertinent to the accident, we reiterate the clarification in *Upjohn* that the

_____

and explained he was calling because Republic Services was defending against a lawsuit. While counsel muddled the relevant attorney-client scheme somewhat by ending the interviews with an offer to represent the employees in their capacities as fact witnesses during trial, the totality of circumstances as developed in the record are such that we conclude the witnesses had sufficient notice that counsel took their statements solely for Republic Services' potential use.

privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Id.* at 395; *see also Gillard*, 15 A.3d at 52 n.8 (acknowledging that the privilege does not protect clients from factual investigations).

Therefore, it is beyond reasonable dispute that Newsuan may seek *ex parte* interviews with the 16 potential fact witnesses—to the extent they are not represented by counsel—regarding their factual observations relevant to the incident in question in the same manner as corporate counsel has, and she may thereafter seek further discovery of available facts through depositions and interrogatories, as provided in the Pennsylvania Rules of Civil Procedure.[8]  The scope of such facts would include, for example, a description

---

[8] We are mindful of decisional law recognizing that application of the privilege to employee communications may adversely affect the truth-determining function of discovery.  Relevant jurisprudence acknowledges, however, that, on balance, the justification for the privilege remains:

> "We have often recognized the conflict inherent in the attorney-client privilege.  On the one hand, our precedent disfavors evidentiary privileges which are "in tension with the truth-determining process of the justice system," as they result in the exclusion of evidence." *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 368 (Pa. 2013).  Nevertheless, we have emphasized the need for protection of various types of communications though the establishment of privileges.  Of these privileges, the attorney-client privilege is often considered "the most revered." *In re: Investigating Grand Jury of Philadelphia County*, 527 Pa. 432, 593 A.2d 402, 405 (1991).
>
> The attorney-client privilege as codified by the General Assembly, 42 Pa.C.S. § 5928, and applied by our courts is intended to foster open discussion between counsel and client. Only with full

of the conditions and operations of the recycling center—with specific reference to the "tipping floor" area—as the witness remembers them to exist proximate to the time of the incident, and what, if anything, the employee may have observed regarding the incident, as these matters are strictly factual, would have been open and apparent to non-defendant employees at the scene—including Newsuan, herself—and, therefore, do not involve confidential information of any kind.

Next, we address Republic Services' challenge to the trial court's order directing the production of corporate counsel's notes and other work product related to his interviews with the 16 employee fact witnesses.

> "The underlying purpose of the work product doctrine is to guard the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case." ***Bagwell v. Pennsylvania Dep't of Educ.***, 103 A.3d 409, 415–16 (Pa.Cmwlth.Ct. 2014), ***appeal denied***, 632 Pa. 678, 117 A.3d 1282 (2015) (quoting ***Commonwealth v. Sandusky***, 70 A.3d 886, 898 (Pa. Super. 2013), ***appeal denied***, 622 Pa. 767, 81 A.3d 77 (2013)).

---

information from the client can an attorney provide relevant and sound legal advice.

***Pittsburgh History & Landmarks Found. v. Ziegler***, 200 A.3d 58, 80 (Pa. 2019). ***But see Monah v. W. Pennsylvania Hosp.***, 44 Pa. D. & C.3d 513, 523 (Pa.Com.Pl. 1987) (opining that broad construction of privilege to communications to corporate counsel from corporate employee who witnessed incident may unfairly disadvantage adverse party, who, unlike corporation, will not know if corporate employee's subsequent statements are consistent with protected communication); ***Gillard***, at 58 (acknowledging potential for abuses).

Work product Rule 4003.3 of the Rules of Civil Procedure governs work product doctrine:

> Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. No. 4003.3.[] Whether the trial court properly interpreted and applied Rule 4003.3 presents a question of law. ***Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity***, 32 A.3d 800, 808 (Pa. Super. 2011), ***aff'd***, 625 Pa. 301, 91 A.3d 680 (2014). Our standard of review is *de novo* and our scope of review is plenary. ***Id.***

***Estate of Paterno v. Nat'l Collegiate Athletic Ass'n (NCAA)***, 168 A.3d 187, 197–98 (Pa.Super. 2017).

The trial court predicated the order directing production of counsel's interview notes on the conclusion that the interviews preceded a time when a relevant attorney-client privilege had attached. We have determined, however, that the particular communications were, and remain, privileged.

With its predicate thus undermined, the court's attorney work-product order cannot stand.[9]

Order vacated. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judge Dubow has joined the Opinion.

Judge Olson concurs in the result.

_____

[9] Even if we agreed with the trial court's opinion rejecting application of the attorney-client privilege to corporate counsel's interviews with employees, we would conclude, nevertheless, that the attorney work-product doctrine precludes disclosure of corporate counsel's recorded mental impressions, conclusions, opinions, memoranda, notes or summaries, legal research or legal theories relating to the interviews. In support of this conclusion, we rely on the relevant observations of our Supreme Court, which recognized, generally, a broader scope to the attorney work-product privilege that includes non-confidential materials prepared by the attorney in anticipation of litigation:

> [The work-product] privilege, unlike the attorney client privilege, does not necessarily involve communications with a client. . . . Rule 4003.3, on its overall terms, manifests a particular concern with matters arising in anticipation of litigation. ***See Nat'l R.R. Passenger Corp. v. Fowler***, 788 A.2d 1053, 1065 (Pa.Cmwlth. 2001) (indicating that "[t]he 'work product rule' is closely related to the attorney-client privilege but is broader because it protects any material, regardless of whether it is confidential, prepared by the attorney in anticipation of litigation"). ***But see Sedat, Inc.*** [***v. Department of Environmental Resources***, 641 A.2d 1243, 1245] (holding that "anticipation of litigation is not a prerequisite to the application of the work product doctrine as it pertains to the work product of attorneys acting in their professional capacity."). Thus, while the two privileges overlap, they are not coterminous.

***Gillard***, 15 A.3d at 59 n.16.

- 19 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/20/2019</u>