J-A24002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MATTHEW L. BRASLOW, D.O. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GUTHRIE/ROBERT PACKER | : | No. 283 MDA 2025 |
| HOSPITAL, GUTHRIE MEDICAL | : | |
| GROUP P.C., D/B/A GUTHRIE CLINIC, | : | |
| LTD., DONALD E. PHYKITT, D.O. AND | : | |
| THERESA E. YURKONIS, D.O. | : | |

Appeal from the Order Entered January 27, 2025
In the Court of Common Pleas of Bradford County Civil Division at No(s):
2021CV0257

BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED: JANUARY 9, 2026**

Matthew L. Braslow, D.O. ("Dr. Braslow") appeals from the order entered by the Bradford County Court of Common Pleas ("trial court") granting in part the motion for sanctions filed by Guthrie/Robert Packer Hospital, Guthrie Medical Group P.C., d/b/a Guthrie Clinic Ltd., Donald E. Phykitt, D.O. ("Dr. Phykitt"), and Theresa E. Yurkonis, D.O. (collectively, "Appellees").  In that order, the trial court found that no attorney-client privilege existed between Dr. Braslow and his father, Professor Norman Braslow ("Professor Braslow"); directed Braslow to provide discovery responses in place of prior claims of an attorney-client privilege; and directed the payment of all reasonable costs and fees incurred by Appellees resulting from this issue and

their subsequent resulting discovery. On appeal, Dr. Braslow contends that the trial court erred in finding no attorney-client privilege existed with Professor Braslow and its award of monetary sanctions. After careful review, we vacate the trial court's order and remand for further proceedings.

In 2017, Dr. Braslow began a residency program in family medicine at Guthrie/Robert Packer Hospital. Dr. Braslow signed an agreement setting forth the terms and conditions of his residency program employment with the hospital. Dr. Phykitt was the residency program director. Subsequently, as a result of Dr. Braslow's alleged lack of professionalism, inability to progress as a resident, and dearth of medical knowledge, Guthrie/Robert Packer Hospital scheduled a meeting for December 20, 2019, where it planned to present Dr. Braslow its formal notice of intent not to renew his residency agreement. Dr. Braslow brought his father, Professor Braslow, to the meeting. Professor Braslow indicated that he was not at the meeting as an attorney and informed all who were present that his law license was not active, but that he was simply there as Dr. Braslow's father to support his son. During this meeting, Professor Braslow elicited several admissions from Dr. Phykitt about the termination. Thereafter, Guthrie/Robert Packer Hospital terminated Dr. Braslow's employment.

On December 29, 2021, Dr. Braslow filed a complaint against Appellees, raising claims of breach of contract, wrongful termination, interference with contractual relations, intentional infliction of emotional distress, and

negligence. Discovery began and Appellees served interrogatories and requests for the production of documents on Dr. Braslow. The trial court explained the subsequent procedural history as follows:

> In certain responses, [Dr. Braslow] invoked an attorney-client privilege in regards to conversations he had with his father, [Professor Braslow], and documents that may have been in his father's possession. [Dr. Braslow] objected to certain discovery requests stating "Norman T. Braslow, JD, PH.D, is a licensed attorney admitted to practice in California, Hawaii, and Washington state. All communication between [Dr. Braslow] and [Professor] Braslow are privileged Attorney Client communications." [**See, e.g.,**] Plaintiff's Response in Opposition to Defendants', Guthrie/Robert Packer Hospital, et al, Motion to Compel, filed 1/24/23, Exhibit C, Plaintiff's Objections and Responses to Defendant's Second Set of Interrogatories and for Production of Documents direct to Plaintiff, Nos. 1, 2, 3, 5, 6, etc.
>
> … Because of [the December 20,] 2019 conversation[,] [Appellees] questioned whether Professor Braslow was acting as an attorney when having conversations with his son about his residency termination prior to and after the meeting.
>
> [Appellees] filed a motion to compel on October 10, 2023[,] asking on what dates Professor Braslow was acting as counsel for [Dr. Braslow] and as father of [Dr. Braslow]. [Dr. Braslow] continuously in response to discovery, letters to defense counsel, briefs to t[he trial c]ourt and arguments to t[he trial] court claimed that [Dr. Braslow's] father, Professor Braslow, was a licensed attorney admitted to practice in California, Hawaii, and Washington State and that the attorney-client privilege attached to conversations and documents. As a result of this representation and after briefs and argument, t[he trial c]ourt by order of December 22, 2023, concluded that an attorney-client privilege existed, but did direct [Dr. Braslow] to respond to the discovery request identifying the nature and duration of the attorney-client relationship.
>
> Upon Professor Braslow's deposition being taken on April 17, 2024, it was discovered that Professor Braslow's law license had been suspended for the past 12 years in all [three] states in which

[Dr. Braslow] claimed he was licensed. His license had been suspended for nonpayment of fees.

[Appellees] then filed a motion for sanctions requesting that [Dr. Braslow's] case be dismissed because [Dr. Braslow] and his attorneys have repeatedly misrepresented to defense counsel and th[e trial c]ourt that Professor Braslow is an attorney licensed to practice in [three] states when in fact he is not. [Appellees] requested sanctions in the form of a dismissal of the action or alternatively, an order prohibiting certain conversations between Professor Braslow and [Appellees] that occurred in the 2019 meeting between [Dr. Braslow] and [Appellees] and/or to compel [Dr. Braslow] to respond to discovery requests where the attorney-client privilege was invoked and/or to pay [Appellees'] attorney fees and costs incurred during discovery as a result of the misrepresentation and claim of attorney-client privilege.

[Dr. Braslow] responded by claiming … Professor Braslow is an attorney licensed to practice law and thus any conversations between [Dr. Braslow] and Professor Braslow are privileged.

[Appellees] argue that since Professor Braslow is not and was not a licensed attorney, the attorney-client privilege does not attach to any conversations he had with [Dr. Braslow] and any documents possessed or created by Professor Braslow in connection with the litigation. [Dr. Braslow's] counsel claims that they only recently learned of Professor Braslow's suspensions of license to practice law and that now Professor Braslow is a member of their legal team. …

Argument on the motion took place on September 24, 2024. The parties filed briefs in support of their positions. On November 4, 2024, [Dr. Braslow] filed a supplemental brief claiming that Professor Braslow has now provided a Certificate of Good Standing from the United States District Court for the District of Hawaii[,] stating that he was "admitted to the bar of that Court on September 26, 1986[,] and remained in good standing through October 24, 2024." … [Appellees] then filed a response arguing that such a certificate was obtained by misrepresentation as one must be actively admitted to the practice of law in order to be in good standing and practice law in [the] United States District Courts.

Trial Court Opinion, 3/28/2025, at 2-5 (some capitalization omitted).

- 4 -

On January 27, 2025, the trial court granted Appellees' motion for sanctions, finding that there is no attorney-client privilege between Dr. Braslow and Professor Braslow. The trial court further sanctioned Dr. Braslow by requiring him to pay Appellees' costs and fees associated with the motion and costs and fees that will be incurred by Appellees during discovery as a result of the absence of attorney-client privilege. The trial court extended the discovery period, providing Appellees 120 days to conduct further discovery on this issue. Dr. Braslow filed a motion for reconsideration, which the trial court denied.

Dr. Braslow timely filed his notice of appeal and a court-ordered concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued a Rule 1925(a) opinion.

On appeal, Dr. Braslow raises the following questions for our review:

1. Whether the trial court's January 27, 2025 [o]rder is an immediately appealable collateral order?

2. Whether the trial court erred and abused its discretion by finding that no attorney-client privilege existed between Dr. Braslow and Norman Braslow, J.D., Ph.D., including failing to recognize the Certificate of Good Standing issued to Norman Braslow by the United States District Court for the District of Hawaii in violation of the Supremacy Clause of the United States Constitution. ***See*** U.S. Const., Art. 6, Cl. 2?

3. Whether the trial court erred and abused its discretion by awarding Appellees monetary sanctions arising from its finding that no attorney-client privilege existed between Dr. Braslow and Norman Braslow, J.D., Ph.D. without any basis in the applicable Rules or Pennsylvania law?

4. Whether the trial court's award of sanctions was error and an abuse of discretion to the extent it exceeded the scope of monetary sanctions permissible pursuant to Pa.R.Civ.P. 4019(g)?

Dr. Braslow's Brief at 11.

**Collateral Order**

In his first claim, Dr. Braslow contends that the trial court's order is a collateral order subject to immediate appeal. *Id.* at 43. Dr. Braslow argues that discovery orders involving privileged materials are appealable under the collateral order doctrine, as the disclosure of such evidence cannot be undone. *Id.* According to Dr. Braslow, the appealed order requires consideration only of whether he must divulge privileged communications, which can be addressed without examining the merits of his underlying action involving his termination from the residency program. *Id.* at 44.

An order's appealability implicates our jurisdiction. *Interest of J.M.*, 219 A.3d 645, 650 (Pa. Super. 2019). "Jurisdiction is purely a question of law; the appellate standard of review is de novo, and the scope of review plenary." *Funk v. Empfield*, 281 A.3d 315, 317 (Pa. Super. 2022) (citation and quotation marks omitted).

"An appeal may be taken as of right from a collateral order of a trial court[.]" Pa.R.A.P. 313(a). "In order for an interlocutory order to be deemed collateral, there must be an order collateral to the main cause of action; the right involved must be too important for review to be denied; and the question presented must be such that if review is postponed until final judgment the

- 6 -

claim will be irreparably lost." ***Brown v. Greyhound Lines, Inc.***, 142 A.3d 1, 6–7 (Pa. Super. 2016) (citation omitted); ***see also*** Pa.R.A.P. 313(b). All three factors must be present before an order may be considered collateral. ***Brooks v. Ewing Cole, Inc.***, 259 A.3d 359, 370 (Pa. 2021). "Rule 313 must be interpreted narrowly, and each of the above prongs must be clearly present for an order to be considered collateral." ***Red Vision Sys., Inc. v. Nat'l Real Est. Info. Servs., L.P.***, 108 A.3d 54, 58 (Pa. Super. 2015) (citation omitted).

"Generally, discovery orders are not appealable as they do not dispose of the litigation." ***Id.*** (citation omitted). "On the other hand, discovery orders requiring disclosure of privileged materials generally are appealable under Rule 313 where the issue of privilege is separable from the underlying issue." ***Fisher v. Erie Ins. Exch.***, 258 A.3d 451, 460 (Pa. Super. 2021) (citation omitted). "This is because if immediate appellate review is not granted, the disclosure of documents cannot be undone and subsequent appellate review would be rendered moot." ***Id.*** (citation omitted).

Here, the order granting Appellees' motion for sanctions and allowing communications Dr. Braslow argues are protected by the attorney-client privilege to be discoverable is separate and distinct from the merits of the claims raised in Dr. Braslow's complaint. ***See Carlino E. Brandywine, L.P. v. Brandywine Vill. Assocs.***, 260 A.3d 179, 194 (Pa. Super. 2021) (discovery claim implicating the attorney-client privilege is separable from the underlying case because the privilege issue can be analyzed without

examining the merits of the underlying litigation). Second, the right of Dr. Braslow's attorney-client privilege is too important to be denied review. *See id.* (finding "[t]he attorney-client privilege is deeply anchored in our law and has been recognized as an important right"); *Perelman v. Raymond G. Perelman Revocable Tr.*, 259 A.3d 1000, 1006 (Pa. Super. 2021) (stating that "the issues of attorney-client privilege and the work-product doctrine implicate rights deeply rooted in public policy"). Finally, if Dr. Braslow is required to disclose communications ultimately found to be protected by the attorney-client privilege, the privilege would cease to exist and be lost. *See Brown v. Greyhound Lines, Inc.*, 142 A.3d 1, 8 (Pa. Super. 2016) (affirming that "the attorney-client … privilege[] implicate[s] rights rooted in public policy concerns and that the claims will be irreparably lost if review is postponed"). Thus, we conclude that all three prongs of the collateral doctrine order are met and we will address Dr. Braslow's appeal. *See Custom Designs & Mfg. Co. v. Sherwin–Williams Co.,* 39 A.3d 372, 375-76 (Pa. Super. 2012) (concluding that orders granting discovery in the face of colorable claims of attorney-client privilege are appealable under the collateral order doctrine).[1]

_____

[1] While Appellees concede that the attorney-client privilege portion of the order granting the motion for sanctions is appealable, they also contend that the "remainder of [Dr. Braslow's] appeal — relating to the sanctions levied against him — must be quashed as a matter of law for [Dr. Braslow's] failure to seek certification of the relevant issues included in the [] order in accordance with 42 Pa.C.S. § 702(b)." Appellees' Brief at 21 (some capitalization omitted); *see also id.* at 22-23. We need not address this

*(Footnote Continued Next Page)*

**Attorney-Client Privilege**

In his second claim, Dr. Braslow contends that his communications with Professor Braslow were privileged. Dr. Braslow's Brief at 45. Dr. Braslow argues that Professor Braslow was a member of the bar of three courts, California, Hawaii, and Washington State. *Id.* at 47-48, 52, 59. He asserts that this was confirmed by Attorney Braslow's deposition testimony, wherein he stated he contacted the bar associations in Washington, California, and Hawaii, all of which confirmed he could give confidential advice to Dr. Braslow. *Id.* at 53 (citing N.T., 4/17/2024, at 30). According to Dr. Braslow, the trial court failed to consider that other jurisdictions treat admitted yet inactive attorneys differently than Pennsylvania. *Id.* at 50-52, 53-54, 55.

More specifically, Dr. Braslow notes that although Professor Braslow allowed his licenses to go inactive/suspended, he never lost his status as a member of the Washington state bar or his authority to practice law there while he was a professor. *Id.* at 48, 52. Dr. Braslow argues that Professor Braslow's inactive status was irrelevant to his being a part of the Washington bar. *Id.* at 52-54. He further elaborates that the Supreme Court of Washington previously stated that a "member of the bar" provides admission to the bar for life "unless such right is revoked upon good cause shown." *Id.*

---

argument as we find the attorney-client privilege issue to be dispositive of this appeal.

(quoting **State ex rel. Foster v. Washington State Bar Ass'n**, 162 P.2d 261, 264 (Wash. 1945)).

Dr. Braslow further asserts that Professor Braslow paid his annual dues in Hawaii and cited to a "Certificate of Good Standing," showing his license had been restored to active status. *Id.* at 52, 55. He disagrees with the trial court's statement that dismissal of the entire cause of action could be warranted because this certificate was never disclosed in discovery and only raised in supplemental briefing after argument on the sanctions motion, stating he was merely advocating his position before the trial court and should not have been threatened with dismissal of the action. *Id.* at 55.

Dr. Braslow additionally claims that the trial court failed to consider his reasonable belief that his communications with Professor Braslow were privileged, and instead found that his belief was irrelevant. *Id.* at 56-58. Dr. Braslow notes that at the time of the hearing on the sanctions motion, he was on the way to Pennsylvania for a deposition, but the trial court postponed the deposition pending its decision on sanctions. *Id.* at 58 (citing N.T., 9/24/2024, at 38, 40). As a result, he highlights that the only evidence of record regarding Dr. Braslow's knowledge that Professor Braslow's licenses had lapsed was Professor Braslow's statement at his deposition indicating that he did not think Dr. Braslow knew. *Id.* at 58. Dr. Braslow seeks reversal of the order requiring him to provide privileged information. *Id.* at 59.

"Whether the attorney-client privilege or the work product doctrine protects a communication from disclosure is a question of law." **Brown**, 142 A.3d at 8 (citation omitted). "Thus, the standard of review is de novo, and the scope of review is plenary." **Id.**

"[T]he attorney-client privilege has deep historical roots and indeed is the oldest of the privileges for confidential communications in common law." **Perelman**, 259 A.3d at 1007 (citation omitted). The attorney-client privilege in Pennsylvania has now been codified by statute: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S. § 5928.

"The attorney-client privilege is intended to foster candid communications between counsel and client, so that counsel may provide legal advice based upon the most complete information from the client." **Brown**, 142 A.3d at 9 (citation omitted). "Since the purpose of the attorney-client privilege is to create an atmosphere that will encourage confidence and dialogue between attorney and client, the privilege is founded upon a policy extrinsic to the protection of the fact-finding process." **Id.** (citation and quotation marks omitted).

"Not every communication with an attorney is protected by attorney-client privilege." **Commonwealth v. Lehman**, 275 A.3d 513, 523 (Pa. Super.

2022). Indeed, "[t]he privilege exists only to aid in the administration of justice, and when it is shown that the interests of the administration of justice can only be frustrated by the exercise of the privilege, the trial judge may require that the communication be disclosed." **Perelman**, 259 A.3d at 1007 (citation omitted).

"Pennsylvania law imposes a shifting burden of proof in disputes over disclosure of communications allegedly protected by attorney-client privilege." **Newsuan v. Republic Servs. Inc.**, 213 A.3d 279, 284 (Pa. Super. 2019) (citation omitted).

> The party invoking a privilege must initially set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, e.g., because the privilege has been waived or because some exception applies.

**Id.** (citation and quotation marks omitted).

The attorney-client privilege applies when the moving party proves the following four elements:

1) The asserted holder of the privilege is or sought to become a client.

2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

- 12 -

***Yocabet v. UPMC Presbyterian***, 119 A.3d 1012, 1027 (Pa. Super. 2015) (citation omitted).[2]

Here, the trial court found Dr. Braslow failed to meet the second element of the test, noting that Professor Braslow "is not a member of the bar of a court or his subordinate as he is suspended from the practice of law." Trial Court Opinion, 3/28/2025, at 6. The trial court rejected Dr. Braslow's claims that Professor Braslow could provide legal advice despite the suspension of his attorney license in Washington State:

> [Dr. Braslow] argues that Washington law applies and Professor Braslow, even with a suspended license[,] is able to provide legal consultation and the attorney-client privilege is invoked. [Dr. Braslow] argues that GR 24 Definition of the Practice of Law in Washington State provides that [Attorney] Braslow, with a suspended license to practice law, can provide legal consultation and invoke the attorney-client privilege. This is not so. GR 24 Definition of Practice of Law provides:
>
> > **(a) General Definition:** The practice of law is the application of legal principles and judgment with regard to the circumstances or objectives of another entity or person(s) which require the knowledge and skill of a person trained in the law. This includes but is not limited to:
> >
> > (1) Giving advice or counsel to others as to their legal rights or the legal rights or responsibilities of others for fees or other consideration.

---

[2] Relevant herein, with regard to factor two, the attorney is not required to be a member of the bar of Pennsylvania. ***See Lehman***, 275 A.3d at 525 n.8 (noting that the attorney-client privilege can apply to an attorney licensed to practice in another jurisdiction at the relevant time).

- 13 -

(2)    Selection, drafting, or completion of legal documents or agreements which affect the legal rights of an entity or person(s).

(3)    Representation of another entity or person(s) in a court, or in a formal administrative adjudicative proceeding or other formal dispute resolution process or in an administrative adjudicative proceeding in which legal pleadings are filed or a record is established as the basis for judicial review.

(4)    Negotiation of legal rights or responsibilities on behalf of another entity or person(s).

* * *

**(d) General Information:** Nothing in this rule shall affect the ability of a person or entity to provide information of a general nature about the law and legal procedures to members of the public.

Wash. GR 24 Definition of Practice of Law, section (a) & (d).

Washington State law provides:

(2)(a) An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment.

[Wash. Rev. Code § 5.60.060(2)(a)].

In light of the above definition, an attorney-client privilege cannot exist between Professor Braslow and [Dr. Braslow]. Professor Braslow was obtaining information from [Dr. Braslow], gathering information and providing legal advice to [Dr. Braslow]. This falls under the definition of "practice of law." Further, in Washington State, in order for the attorney-client privilege to be invoked, the communications must occur in the "course of professional employment." That is, as a licensed attorney[,] which Professor Braslow was not. Finally, certainly, subsection (d) of the Wash. GR 24 Definition of Practice of Law, does not apply here as argued by [Dr. Braslow]. Professor Braslow was not providing information of a general nature about the law and legal procedure to members

- 14 -

of the public, but specific information about legal rights to an individual. It is clear that Professor Braslow is not a licensed attorney whose consultation with would invoke the attorney-client privilege.

Trial Court Opinion, 3/28/2025, at 6-8.

Likewise, the trial court rejected Dr. Braslow's claim regarding the certificate of good standing from Hawaii, noting that the certificate was never presented in response to discovery or before the trial court. *Id.* at 9. In any event, the trial court further concluded that to be a member of the bar in Hawaii, Professor Braslow, who was initially admitted to that bar on September 26, 1986, had to be an active member in good standing of the bar of "any State or territory in the United States or the District of Columbia, and [have] maintained that standing." *Id.* at 10 (quoting D. Haw. LR 83.1). Again noting that Professor Braslow was in inactive status in three states, the trial court found that he did not qualify as a member of the bar of Hawaii. *Id.*

Finally, the trial court highlighted that Professor Braslow was not licensed to practice in any jurisdiction and, as such, Dr. Braslow's reasonable belief regarding his communications with his father was irrelevant. *Id.* at 10-12. The trial court further found that Dr. Braslow did not seek a hearing on this issue. *Id.* at 12.

We agree with the trial court that Professor Braslow was not a member of the bar of a court. *See Yocabet*, 119 A.3d at 1027. Professor Braslow admitted to being inactive/suspended in Washington, Hawaii, and California, and that he was unable to practice law at the time of the communications Dr.

- 15 -

Braslow contends are privileged. ***See*** N.T., 4/17/2024, at 30, 33-34; ***see also*** Brief in Support of Dr. Braslow's Response to Appellees' Motion for Sanctions, 7/5/2024, at 9, Exhibits L, M, N (Bar Status reports as of July 2, 2024, showing Professor Braslow to be suspended/inactive in Washington, Hawaii, and California). While Dr. Braslow premises his claims of privilege on the fact that Professor Braslow was admitted to the bars of the three states and therefore a member of the bar and able to advise and consult with Dr. Braslow, ***id.*** at 30, 32, he ignores that Professor Braslow must be able to practice law to render legal services protected by the privilege. ***See Yocabet***, 119 A.3d at 1027 (noting that the communication sought to be protected by the attorney-client privilege must be "for the purpose of securing either an opinion of law, legal services or assistance in a legal matter"); ***Commonwealth v. Pilchesky***, 151 A.3d 1094, 1099-1100 (Pa. Super. 2016) ("Proper protection of members of the public demands that no person be permitted to act in the confidential and demanding capacity of a lawyer unless he is subject to the regulations of the legal profession.") (citation omitted); ***see also*** Pa.B.A.R. 201(a)(1) (stating that "[p]ersons admitted to the bar pursuant to these rules" are "members of the bar of the courts of this Commonwealth and may practice law generally within this Commonwealth"); Pa.R.D.E. 102(a) ("An attorney on inactive status is ineligible to practice law in Pennsylvania.").

With regard to Washington State, where the communications to be protected occurred, the court's admission and practice rules ("APR") set forth the requirements for admission to the bar:

> A person shall not appear as an attorney or counsel in any of the courts of the State of Washington, or practice law in this state, unless that person has passed an examination for admission, has complied with the other requirements of these rules, and is an active member of the Washington State Bar Association (referred to in these rules as the Bar). A person shall be admitted to the practice of law and become an active member of the Bar only by order of the Supreme Court.

APR 1(b); *see also City of Seattle v. Ratliff*, 667 P.2d 630, 632 (Wash. 1983) (noting that the APRs are mandatory court rules in Washington State that "set minimum qualifications for admission to the bar"). The rules further state:

> [The] Bar shall request that the Supreme Court suspend a lawyer … from the practice of law upon … failure of a lawyer … to comply with licensing requirements under these rules…. This includes but is not limited to a lawyer's … failure to pay the annual license fee or late payment fee to the Bar[.]

APR 17(a)(2)(A); *see also* https://www.wsba.org/for-legal-professionals/license-renewal/status-changes/legal-directory-reference (last visited Dec. 8, 2025) (Washington Bar Association explaining that attorneys in inactive or suspended for nonpayment of fees status are ineligible to practice law). Notably, the Washington Court of Appeals defined the term "practice of law" to include

> not only the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity with the adopted rules of procedure, but in a

- 17 -

> larger sense includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured.

*State v. Hunt*, 880 P.2d 96, 99 (Wash. App. 1994) (citation omitted). Plainly, as an inactive member of the Washington bar, Professor Braslow could not practice law and was thus unable to provide legal advice to his son. *See* APR 17(a)(2)(A); *Hunt*, 880 P.2d at 99; *see also Bennion, Van Camp, Hagen & Ruhl v. Kassler Escrow, Inc.*, 635 P.2d 730, 732 (Wash. 1981) (explaining that "the practice of law … is generally acknowledged to include not only the doing or performing of services in the courts of justice, throughout the various stages thereof, but in a larger sense includes legal advice and counsel and the preparation of legal instruments by which legal rights and obligations are established").[3]

_____

[3] We note that *State ex rel. Foster* does not support Dr. Braslow's position that his communications with Professor Braslow were privileged. There, the appellant had previously passed the bar examination and practiced law in Washington. *State ex rel. Foster*, 162 P.2d at 262. Subsequently, the appellant moved to Alaska for approximately thirty-three years; upon his return to Washington, he applied to the Washington State Bar Association for active membership. *Id.* The bar association denied membership, indicating that he had to pass the bar examination again, or be readmitted to the bar by showing he had practiced for five or more years in Alaska. *Id.* The Washington Supreme Court reversed, noting that although the appellant was a member of that court, he could not practice law in the state until he paid his dues and the board could investigate his moral character. *Id.* at 266. Here, like the appellant in *State ex rel. Foster*, Professor Braslow had not paid his license fees and could not practice law.

Likewise, Professor Braslow was inactive/suspended in Hawaii at the time of the communications in this case and therefore he could not provide legal advice to his son. *See* HI.R.S.Ct. 2.16 (suspended attorneys must advise clients to seek legal advice elsewhere). We further reject Dr. Braslow's argument that Professor Braslow is a member of the Hawaii bar based on the certificate of good standing. Dr. Braslow admits that the certificate was not granted until October 24, 2024, well after the time period involving the conversations and documents at issue in this case. *See* Motion for Reconsideration, 2/13/2025, at 10. In fact, as stated above, Dr. Braslow admitted that Professor Braslow was on inactive/suspended status as of July 2, 2024. *See* Brief in Support of Dr. Braslow's Response to Appellees' Motion for Sanctions, 7/5/2024, at 9, Exhibits N.[4]

The law is clear that Professor Braslow's inactive/suspended status in other states did not permit him to engage in the practice of law, including the provision of legal advice to Dr. Braslow. As Professor Braslow was on inactive/suspended status in every state in which he was licensed to practice law at the time he provided legal advice to Dr. Braslow, we conclude that the attorney-client privilege cannot attach to those communications.

---

[4] Dr. Braslow raises no claims that he was able to provide legal advice based upon his California law license. Thus, any claim in this regard is waived. *See In re Est. of S.G.L.*, 885 A.2d 73, 73 n.1 (Pa. Super. 2005) (noting that failure to address issue in argument section of the appellate brief renders the claim waived).

This does not end our inquiry, because although the attorney–client privilege only protects communications with licensed attorneys, "[t]he privilege for communications of a client with his lawyer hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." **Triffin v. DiSalvo**, 643 A.2d 118, 120 (Pa. Super. 1994) (citation omitted). "It is sufficient if he reasonably believes that the person consulted is a lawyer, though in fact he is not." **Id.** (citation omitted).

Dr. Braslow argues that he reasonably believed Professor Braslow was acting as his attorney. Dr. Braslow's Brief at 56-57. We conclude, however, that we cannot make this determination based on the record currently before this Court. The only evidence of record about Dr. Braslow's knowledge in this regard is Professor Braslow's deposition testimony that he did not think Dr. Braslow knew his licenses had lapsed. N.T., 4/17/2024, at 92; **see also id.** at 90 (stating that he never gave Dr. Braslow any indication that the information being shared would not be confidential). There is no evidence or testimony from Dr. Braslow whether he was aware of Professor Braslow's license status. **See** Trial Court Opinion, 1/27/2024, at 4 (noting "[t]here is no evidence of record as to whether or not [Dr. Braslow] was aware that his father was not a lawyer entitled to practice law").

Although the trial court indicated that Dr. Braslow never requested a hearing to determine his reasonable belief, **see** Trial Court Opinion,

3/28/2025, at 12, we do not find Dr. Braslow waived this claim based on the facts of this particular case. Pertinently, as noted above, the trial court erroneously found that what Dr. Braslow knew or did not know was irrelevant in determining whether the privilege applied. *Id.* Furthermore, at the hearing on the sanctions motion, Dr. Braslow's counsel stated Dr. Braslow was flying across the country for a deposition. N.T., 9/24/2024, at 38. The trial court ultimately delayed Dr. Braslow's deposition pending its decision, as requested by Appellees' counsel.[5] *Id.* at 40. As such, there was no opportunity for Dr. Braslow to testify or be deposed about his reasonable belief as to Professor Braslow's ability to practice law.

Thus, we must reverse the order granting Appellees' motion for sanctions and remand to the trial court for a hearing to determine whether Dr. Braslow reasonably believed Professor Braslow was acting as his attorney when they engaged in the identified communications. In making this determination, we note that Dr. Braslow is allowed the protection of the attorney-client relationship if he mistakenly, but reasonably, believed that his father was a licensed and active attorney. *See Triffin*, 643 A.2d at 120. However, if the court determines that Dr. Braslow knew or had reason to know that his father did not have an active law license, he is not entitled to

---

[5] Appellees' counsel requested to delay Dr. Braslow's deposition because, if successful on this motion, they would want to first depose Professor Braslow again to answer questions in response to which he had invoked the attorney-client privilege prior to deposing Dr. Braslow. N.T., 9/24/2024, at 39.

protection under the attorney-client privilege. **See Joyner v. SEPTA**, 736 A.2d 35, 37-38 (Pa. Cmwlth. 1999) (concluding that appellant "failed to establish the reasonableness of his subjective belief that he was communicating with his attorney," and therefore permitted his communications to be introduced into evidence).

As we are vacating the trial court's decision on this basis, we need not address Dr. Braslow's remaining claims related to the entry of sanctions.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 1/09/2026